1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**DECLARATION OF ALI MOGHADDAS**</u>

I, Ali Moghaddas, declare and state as follows:

1.    I am an Assistant United States Attorney ("AUSA") for the Central District of California.  Together with AUSA Scott Paetty, I represent the government in <u>United States v. Christopher K. Kamon</u>, No. 22-MJ-4385-DUTY.  I make this declaration in support of the government's opposition to defendant's Application for Review/Reconsideration of the Order Setting Detention.

2.    Attached hereto as **Exhibit 1** is a true and correct copy of the transcript of defendant's detention hearing on November 10, 2022 in the United States District Court for the District of Maryland.

3.    Attached hereto as **Exhibit 2** are true and correct copies of an October 31, 2022 subpoena response by Skadden, Arps, Slate, Meagher & Flom LLP, and a November 7, 2022 follow-up e-mail regarding defendant's whereabouts.

4.    On November 5, 2022, the date of defendant's arrest, AUSA Scott Paetty and I had a telephonic conversation with defendant's counsel, Jack DiCanio, wherein Mr. DiCanio indicated that although he understood defendant was looking to get a fresh start outside of California, he was not aware that defendant had moved to The Bahamas.

5.    Attached hereto as **Exhibit 3** is a true and correct copy of a December 8, 2022 affidavit executed by defendant, including the relevant excerpts of proceedings from <u>In re: Lion Air Flight JT 610 Crash</u>, 18-CV-07686-TMD (N.D. Ill.).

6.    Attached hereto as **Exhibit 4** are true and correct excerpts of banking records reflecting several wire transfers from defendant's domestic bank accounts to accounts in both The Bahamas and Hungary.

7.    Attached hereto as **Exhibit 5** are true and correct copies of checks issued by Bravo Construction to Hammer and Wood, as well as a public records report for Hammer and Wood indicating Mr. Kuo's role as an "Officer" of the company.

8.    Attached hereto as **Exhibits 6 and 7** are true and correct copies of defendant's filings from the Girardi Keese bankruptcy matter in Case No. 20-bk-21022.

9.    On December 31, 2022, IRS CI Special Agent Ryan Roberson and I had a telephonic conversation with the Girardi Keese bankruptcy trustee, Elissa Miller, and attorney Philip Strok.  Ms. Miller and Mr. Strok described for us defendant's lack of cooperation in the bankruptcy proceedings including his vigorous opposition to the trustee's attempts to designate defendant as the person most knowledgeable ("PMK") for Girardi Keese.  Ultimately, after the bankruptcy court ordered defendant to appear and testify as the PMK, defendant invoked his 5th Amendment right against self-incrimination to virtually every question asked during the examination.  In fact, defendant even declined to verify his current address when asked.  Ms. Miller provided the government with the audio recording of the approximate one-hour examination, which I can lodge with the Court upon request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on January 3, 2023.

*/s/ Ali Moghaddas*

ALI MOGHADDAS

EXHIBIT 1

```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
                          NORTHERN DISTRICT

- - - - - - - - - - - - - - x
                            :
UNITED STATES OF AMERICA     :
                            :
     v.                      :   Criminal No. 22-03247-MJM
                            :
CHRISTOPHER K. KAMON,        :
                            :
          Defendant.         :   Baltimore, Maryland
                            :
- - - - - - - - - - - - - - x   November 10, 2022
```

## DETENTION HEARING

BEFORE:  THE HONORABLE MATTHEW J. MADDOX, JUDGE


APPEARANCES:                COLLEEN McGUINN, Esq.
                            Office of the U.S. Attorney
                            36 South Charles Street
                            Fourth Floor
                            Baltimore, Maryland 21201
                               On Behalf of the Government

                            JESSIE LIU, Esq.
                            Skadden, Arps, Slate, Meagher
                            & Flom
                            1440 New York Avenue, NW
                            Washington, DC 20005
                               On Behalf of the Defendant

Also Present:               Nikki Martin, PTO
                            Ryan Roberson, IRS Special Agent

Audio Operator:             Telita Davis

Transcription Company:      CompuScribe
                            P.O. Box 789
                            Cheltenham, Maryland  20706-9998


Proceeding recorded by electronic sound recording,
transcript produced by transcription service.

I N D E X

                                                                Page

Preliminary Matters                                                3

Comments by Colleen McGuinn, Esq.
    Attorney for the Government                                    4

Comments by Jessie Liu, Esq.
    Attorney for the Defendant                                    21

Further Comments by Colleen McGuinn, Esq.                         31

Ruling by the Court                                              35

Keynote: "----" indicates indiscernible in the transcript.

                        P R O C E E D I N G S

     (Whereupon, at 12:20 p.m., the hearing began.)

          MS. McGUINN:  Your Honor, good morning, Colleen
McGuinn on behalf of the Government, calling United States of
America versus Christopher Kamon.  Which is our local case
number 22-3247M.  Your Honor, good morning and to my --
excuse me, I think it is afternoon.  To my left is Special
Agent Ryan Roberson with the IRS.

          THE COURT:  All right.  Good morning to both of
you.  And I will note that we have Nikki Martin here from
pre-trial and probation.  Good morning.

          MS. MARTIN:  Good morning, Your Honor.

          THE COURT:  Good morning, Ms. Liu.

          MS. LIU:  Good morning.  Your Honor, Jessie Liu on
behalf of Christopher Kamon.

          THE COURT:  Good morning, Mr. Kamon.  You all may
be seated.  Mr. Kamon, you are here for your detention
hearing.  It will be decided today whether you will be
ordered detained pending your trial in this criminal case.
It is pending in the Central District of California.

          I expect that various aspects of the case will be
discussed.  Possibly to include some of the evidence against
you.  And I expect that the lawyers may say things like
drawing conclusions based upon the evidence that they will be
discussing.  But I want you to rest assured that today is not

1   the day of your trial.

2          Today is not the day where  you will be judged

3   innocent or guilty of the charges but one of the things that

4   I have to consider today is the weight of the evidence

5   against you.  So the evidence will be discussed.  But until

6   the date of your trial, you will still be entitled to the

7   presumption of innocence.  Do you understand all of that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  Very well.

10          Okay, So Ms. McGuinn, this is your motion for

11   detention. So I will hear from you first.  But first I will

12   have you address the question of the statutory basis to hold

13   a detention hearing here today.

14          MS. McGUINN:  Thank you, Your Honor.  The statutory

15   basis would be the Government's request based on the

16   Defendant's risk of flight under 3141(f)(2)(a).  The

17   seriousness of flight -- this is a allegation of wire fraud

18   which carries a maximum penalty of 30 years.  So that is the

19   basis.

20          THE COURT:  All right.  So thanks very much.  So

21   what is the evidence as to risk of flight?

22          MS. McGUINN:  Thank you.  Your Honor, if it is okay

23   with Your Honor, I am going to briefly address the factors

24   under G and then I will address the flight which is sort of

25   the major issue.

1            THE COURT:  All right.  Thanks very much.

2            MS. McGUINN:  Thank you.  Your Honor, under 3142(g)

3    the factors as to why detention is appropriate and I am going

4    to touch on those briefly because I will submit now that

5    flight is the most weighing concern on the Government at this

6    point.  But the factors to be considered by this Court are

7    certainly the nature and circumstances of the offense.  I am

8    sure that Your Honor has had an opportunity to read the

9    complaint that came to us from California.

10           But briefly if I may, the allegations in this case

11   surround the fact that the Defendant was the Chief Financial

12   Officer for a large L.A. law firm called Girardi Keese.  And

13   when I say a large law firm, for someone like me who has been

14   a prosecutor my whole life, when I hear a firm that makes

15   hundreds of millions of dollars a year, that is unfathomable

16   to me but apparently that is the type of law firm that we are

17   dealing with.

18           In this case, that firm was bringing in that type

19   of money until it as forced into  involuntary bankruptcy in

20   2020.  The Defendant by the very nature of being a CFO had

21   precise and very specific information as to how the finances

22   in this law firm worked.  In this case and what is charged in

23   the complaint, is the allegations of what I will call sort of

24   a side fraud which is he is directly responsible under these

25   allegations for approximately $10 million or more of a loss

1    from Girardi Keese which I will refer to as GK.

2              That firm is also the subject of a larger theft

3    scheme that is being investigated with other targets or

4    persons being charged and the loss on that is about $100

5    million of a schedule and that loss is from clients who paid

6    the firm for their services and that money was being funneled

7    out and stolen in part by this Defendant but as well as other

8    lawyers in the firm.

9              It is very -- it is known that the Defendant was

10   responsible for cutting the checks for this firm.  He was in

11   charge of distributing settlements or the money to the

12   clients.  He had intimate knowledge of the attorneys and the

13   clients in this firm and who was getting paid and who wasn't.

14   He was very aware that these clients were therefore not

15   getting paid in the way that they were supposed to under

16   their arrangement with this law firm.

17             This is not a Robin Hood type of theft.  This is

18   not a drug addiction type of fueled theft.  This is purely

19   greed and a lavish lifestyle.  My colleagues in California

20   told me that the base level offense in this case just for

21   Your Honor's consideration is a 33 and that has guidelines

22   again just for our purposes of discussion, not final number,

23   we are already talking 135 to 168 months for this particular

24   offense.

25             THE COURT:  That is the range?

1          MS. McGUINN:  That is the range right now.  And

2     again obviously as you know that is just an approximate for

3     today's discussion.  The weight of the evidence against the

4     Defendant is vast.  To my left as I introduced him to you is

5     Special Agent Roberson who -- he and other agency -- FBI is

6     involved in this as well.  The IRS shared with me, lots of

7     information about this particular case.

8          I will tell you that the co-schemers were

9     interviewed as part of this case already.  And they have

10     informed law enforcement that the Defendant would

11     specifically give them thousands of dollars in checks for re-

12     furnishing his own personal home or for them to deposit into

13     their account and then they would give cash back to him.  And

14     these companies were actually in the books that GK

15     maintained, listed as other vendors.

16          He set up these kind of shell arrangements with

17     these co-schemers giving them money, taking -- I will use the

18     colloquial term kickbacks, from them in order to hide the

19     theft that he was committing.  He used checks from the

20     company as I sort of indicated to do multi-thousand dollar

21     repairs on his own personal property. He is responsible for

22     the cooking of the books if we can use that term where he was

23     paying checks to Bravo which is one of the construction

24     companies in this case, but they were listed as something

25     else in the books.

1          He also had a female that he was paying $20,000 a

2    month, sort of -- I will use the term retainer.  She was his

3    companion and apparently they met on an escort service type

4    of website. He would lavish her with gifts including purses

5    that are valued at $120,000 including trips to Africa on

6    safari and things of that nature.

7          The Defendant makes about $350,000 from last time

8    he filed taxes.  And his lifestyle that we are hearing about

9    is clearly someone who is living well outside that and is

10   being furnished by the money that he was stealing from the

11   law firm.  The female witness that I was speaking of, is sort

12   of the person who provided the most information about the

13   flight risk that we will get to in a moment.

14         But she was someone who was also receiving and

15   benefitting from the money that the Defendant was stealing

16   from the law firm.  As to the history and characteristics of

17   him, and the dangerousness, I will sort of submit on that.

18   There are no prior convictions as is all too often with while

19   collared type crimes.  This is not someone who comes from a

20   background of a -- in a criminal world.

21         But it is interesting and I would note in Ms.

22   Martin's report that when he was asked to sort of discuss his

23   finances which would certainly be important as to whether or

24   not any sort of monetary bail would be appropriate,

25   understandably he was advised by counsel not to discuss it

1    but I would simply submit, Your Honor, that we have

2    absolutely no idea given the nature of the theft that I laid

3    out for you, what ever counsel presents as far as money that

4    he can put forth.  Whether that is actually his money or

5    whether that is money that is part and parcel of this $10

6    million or more dollar theft.  That money from the law firm

7    was also seen paying for automobiles, Porsches.  He had more

8    than one that he had.

9              He had, I think it is 5 properties in California.

10             MR.          :  Not in California.

11             MS. McGUINN:  Oh 5 properties total, I apologize.

12   It is hard to know when he is not willing to discuss what his

13   actual direct finances are and we know that he is under the

14   shadow of all of this money going into his bank account that

15   this money that he might be talking about is in fact the

16   proceeds of the theft -- not only that he committed under

17   this complaint but which is being investigated in the larger

18   investigation.

19             THE COURT:  Can I ask about the evidence that

20   supports these additional properties in California?  I

21   understood that he admitted that he did own a property in

22   California that he recently sold.

23             MS. McGUINN:  Yes.

24             THE COURT:  So what is the evidence as to the other

25   properties?

1              MS. McGUINN:  He sold those properties as well,

2      Your Honor.  They are -- they were listed in other parts of

3      California and he has since liquidated them and sold them.

4              THE COURT:  But what is the evidence that it is

5      him?  I mean, what is the nature of the records that supports

6      his ownership of those properties?

7              MS. McGUINN:  So it is my understanding from my

8      colleagues in California that they did searches of the sales

9      and determined that he was the person who had bought and sold

10     those.

11             THE COURT:  Thanks very much.

12             MR.          :  And we have mortgage payments.

13             MS. McGUINN:  And they have the mortgage payments

14     as well, Your Honor.

15             THE COURT:  Great.  Thank you.

16             MS. McGUINN:  I appreciate that.  Thank you.  So,

17     those are addressing the factors that we have here today.

18     But the main reason as I am sure Your Honor suspects from

19     reading the complaint is the Government's concern of flight.

20     And while it is true that for the most part, when I or other

21     prosecutors stand in court on a wire fraud case, we are not

22     usually asking for detention.  It is not common.

23             Typically if a person has an attorney and it is a

24     wire fraud case and we are not talking about violence and we

25     are not talking about danger to the community,  it is not too

1   often that we would stand here and ask Your Honor to detain

2   someone on a crime such as wire fraud.  That that is what

3   makes this Defendant so different from perhaps his other

4   cohorts that have or will be charged.  This Defendant fled.

5           The information that the Government has received is

6   that the female witness was interviewed by law enforcement

7   and other lawyers in relation to yet another case that the

8   Defendant is involved in.  And she in August of 2022, after

9   she was contacted by FBI and law enforcement told the

10  Defendant that they had found her and that they had

11  interviewed her and that they had talked to her.  And she

12  tipped him off that this investigation was coming and

13  circling around him.

14          And it is at that point after learning that she had

15  been interviewed and some of his other co-schemers that he

16  had given these checks to, who they then gave cash back to

17  him after they had been interviewed, it is at that time that

18  on September 21st of 2022, he boarded a flight for the

19  Bahamas, had booked a return flight but just never got on

20  that return flight.

21          THE COURT: Can I ask you one question about

22  something you --

23          MS. McGUINN:  Yes.

24          THE COURT:  -- just said.  You indicated what the

25  alleged escort said with regards to his having disclosed to

lnc                                                                                          12

1    him that -- to the Defendant that agents had come asking

2    about him.  I remember reading something from the complaint

3    to the effect of Mr. Kamon expected or suspected that he may

4    be implicated in fraudulent conduct prior to the agent

5    speaking to Ms. Rokita(sic).  And that he made statements

6    about potentially leaving the country at that point in time.

7    Is all that correct?

8            MS. McGUINN:  Yes, Your Honor.  Everything that is

9    in the complaint is correct.  But what is interesting is that

10   now he is actually -- they have actually found this witness

11   who actually has a very intimate knowledge of this particular

12   Defendant and she is laying out that information.  I would

13   argue that it is at that point while he was thinking, had

14   been planning and thinking about doing these things, the

15   writing is now on the wall.  And it is at that point on

16   September 21st that he fled to the Bahamas.  But he had been

17   talking about it prior to that, yes.

18            In fact he had told that same witness that he was

19   thinking of doing this and changing his name and doing what

20   he needed to do to sort of disappear off of the radar.  And

21   upon going to the Bahamas, Your Honor, as I indicated, he did

22   not take the return flight home and he just so happened to

23   show up in BWI airport this past Friday night.  He has a

24   sister as Your Honor probably saw in the report Ms. Martin

25   prepared, who lives here in Maryland.  And it is from our

1    information and from my discussions with my law enforcement

2    colleagues, that ticket was kind of a last minute because it

3    popped up that same day and everyone scrambled to get the

4    complaint done on that Friday.

5         The theft allegations did become public as Your

6    Honor read in the complaint in 2020 and 2021 and it is at

7    that point as Mr. -- Agent Roberson was indicating, he began

8    to sell all those residences that he has in the United States

9    and liquidating those.  I will tell Your Honor that with

10   regard to the Bahamas, $2.2 million was wired by the

11   Defendant to a law firm in the Bahamas that he confirmed in

12   an e-mail was going through with the purchase of his home

13   which was $2.4 million property in the Bahamas. And that sale

14   was finalized on October 13th of 2022.

15        And I will -- through some research of my own, and

16   that of my colleagues, in the Bahamas, you can get permanent

17   residency quicker if you purchase a property that is over

18   $750,000.  And while extradition is certainly -- you know, I

19   guess we have an extradition agreement with the Bahamas, once

20   you are a permanent resident, as I am sure Your Honor know,

21   that complicates that process for sure.  Slows it down.  And

22   from what my colleague in California has indicated to me from

23   the Office of Internal Affairs, they have had a lot of issues

24   with the Bahamas lately and things taking months and years in

25   order for the extradition process to continue or to produce

lnc                                                                    14

1    the person back to the United States.

2            As I indicated, he has been liquidating his assets.

3    There were the sale of 3 or 4 Porsche vehicles.  And those

4    proceeds were actually seen going into his bank account and

5    ultimately wired to pay for the house in the Bahamas.  And it

6    should be noted that the law firm, GK, is actually who made

7    the payments for those Porsches.  For other Porsches that he

8    owned.

9            Your Honor, on page 7 of the complaint there is the

10   discussion of one of his co-schemers, Mr. Arazola(sic) who is

11   a person who works in construction.  He did significant work

12   on the Defendant's home, the one that was recently sold in

13   September including about a $13 million renovation on that

14   home.  On the other home in Encino.  And at the home in Palos

15   Verdes.  They were 106 checks written to him and he was

16   listed as a plumbing vendor in the books.

17           THE COURT:  Did you say $13 million?

18           MS. McGUINN:  13 month renovation, I am sorry.  13

19   month. I apologize, I am sorry, Your Honor.

20           THE COURT:  That is all right.

21           MS. McGUINN:  That house in Encino, that he did the

22   renovations on sold for 680,000 which was also forwarded for

23   the purchase of the Bahama house.  Sorry, Your Honor, the

24   agent is just confirming for me that that house actually sold

25   for 3.3 but 680 we can confirm was sent for the -- towards

1   the purpose of the Bahamas home.  I just want to clarify that

2   point.

3              THE COURT:  You said 680?  680,000?

4              MS. McGUINN:  Yes.  Approximately.

5              THE COURT:  Is that part of the 2.2 million that

6   was wired?

7              MS. McGUINN:  Yes.

8              THE COURT:  Overseas to the Bahamas?

9              MS. McGUINN:  Yes.

10             THE COURT:  And so the money that was wired was

11  used to purchase the Bahamas property?

12             MS. McGUINN:  Yes.

13             THE COURT:  Okay.

14             MS. McGUINN:  Your Honor, aside from that, when the

15  Defendant was arrested and at BWI airport, it should be noted

16  that he had four mobile phones on his person.  This is

17  consistent with what other witnesses who have been spoken to

18  about him talking about leaving the country and talking about

19  leaving and that he was starting to get -- I will use the

20  word paranoid about law enforcement and was starting to cycle

21  through different cell phones that he was using.  Those cell

22  phones have been seized and are still being processed for

23  purposes of the search warrant.

24             Your Honor, he -- it should be noted and this was I

25  believe in the complaint, actually it was not in the

1    complaint, my colleague in California shared with me that the

2    Defendant was part of a civil -- Federal civil suit in San

3    Francisco in California and that he actually evaded service

4    of process for several months and it took the District Court

5    judge there had to extend the service period for the

6    Plaintiffs because he kept ducking service.

7           I bring that to your attention only because it just

8    shows a pattern of this Defendant not complying or being

9    difficult in his compliance with orders of this Court or of

10   the Court in general.  Your Honor, he has an absolute reason

11   to flee but more importantly he has shown that he would flee

12   and more importantly he has the assets to do that.  In this

13   particular case, given the pattern of behavior I have laid

14   out, a promise of a bond or would almost mean nothing,

15   moreover, there is nothing that can be done at this point to

16   show that that money or large amount of money would belong to

17   him anyway.

18          If you look at the pre-trial services report that

19   Ms. Martin prepared, he talks that -- about that he had been

20   living with his sister which is simply not true.  He had not

21   been living with his sister.  He boarded a flight from

22   California and went to the Bahamas and that is where he has

23   been.  He talks about his previous California residences but

24   never mentions the fact that he owned a home in the Bahamas.

25   He was not forthright with Ms. Martin when he was laying his

lnc                                                                           17

1    residential history.

2              In the interview with his sister, who is the only

3    person held out to Ms. Martin to be an appropriate third

4    party custodian, even  Ms. Martin would agree and has agreed

5    that she would not necessarily be appropriate because for all

6    the reasons outlaid in her report but I would say to Your

7    Honor one, he wasn't physically living there anyway and he

8    was already lying about that.  And he is moreover, 3,000

9    miles away from where he has been needed to go to court which

10   makes it difficult when he has already fled the country to

11   begin with.

12             He has shown in the last 10 -- over 20 excuse me I

13   think it is the last 10 to 20 years he has multiple

14   international flights to at least 10 international countries

15   which suggests that he has at least some knowledge of

16   international travel and places to go.  His attorneys --

17             THE COURT:  I am sorry, is that reflected in the

18   pre-trial services report what you just said?

19             MS. McGUINN:  The international travel, yes.  That

20   is one of Ms. Martin's reasons.

21             THE COURT:  I am trying to -- oh but you had

22   additional detail about that?

23             MS. McGUINN:  Yes, I had additional detail.

24             THE COURT:  And what -- can you review that again

25   because I -- it went by a little too fast for me.

lnc                                                                          18

1          MS. McGUINN:  That is fine, Your Honor.  I just

2     want to make sure it is -- the Defendant has been known to

3     travel internationally to at least 10 different countries

4     over the past 20 years.  I think it just suggests the person

5     who understands international travel and certainly has the

6     means and ability to move around.

7          But importantly and notably to the Government, Your

8     Honor, is we have the -- a letter and an e-mail from his law

9     firm that represents him today but it is from the firm that

10    actually is in -- the branch of their firm that is actually

11    in Chicago, in Illinois.  And they were asked where the

12    Defendant was living, to provide that information.  And in a

13    letter dated October 31st, so just recently, they provided

14    that Palos Alos address in California.  That is the last

15    address they had.  They provided his cell phone number and

16    his e-mail address and he was not there.

17         THE COURT:  That was after he had sold it.

18         MS. McGUINN:  Excuse me?  He had sold it --

19         THE COURT:  He had sold it.

20         MS. McGUINN:  Yes, it is after he had sold it, yes.

21    And also notably that same law firm or branch of his law firm

22    in Illinois, in an e-mail dated November 7th, so just a

23    couple of days ago and in fact while we were here in Court,

24    sent an e-mail stating that they still don't have any other

25    address for him.  So he was being represented by this law

lnc                                                                    19

1   firm.  They have no idea where he was.  His sister had no

2   idea where he was.  She said in the pre-sentence -- or excuse

3   me, the pre-trial services report that she thought he was --

4   he had been traveling to the Bahamas but she really had no

5   idea where he was actually living.

6             That all in all, Your Honor, when you put all of

7   those things together, he is absolutely and completely and

8   totally a flight risk in this case.  He has shown that he has

9   the ability and the desire to get out of our country.  He has

10  bought a property in the Bahamas that he still owns.  He left

11  and did not want or board his return flight.  Even if we

12  surrender his passport, at this point we have no idea where

13  his assets are, where they are hidden, what he may have done

14  with these millions of dollars where at this point for

15  purposes of this discussion, is stolen money.

16            Any promises of a monetary bond quite frankly is

17  probably paved with dirty  money.  There would be no way to

18  show that at this point.  There is no reason at this point to

19  let him go today, just so that he can go on the run again.

20  It is appropriate to hold him in detention, let him return to

21  California.  If there is a different picture that is put

22  together in the next coming weeks, by his Counsel, they are

23  able to determine a place for him to leave in California or

24  something like that, allow that California judge and those

25  attorneys to figure that out.

1          But right now, there is just not enough information

2   to secure that he is going to stay if Your Honor releases him

3   here in Maryland today, 3,000 miles away from the court where

4   he is due to report when he has in fact a home in the Bahamas

5   that he has already purchased and has fled to before.  If

6   there are any other questions, Your Honor, I have the agent

7   here to my left, if Your Honor has any other specific

8   questions.  I would submit to Your Honor certainly as you

9   know, this is borrowed information.  The agent has much more

10  specific information if Your Honor has any questions.

11          THE COURT:  Okay.  I am not sure how specific this

12  question is getting to but do you have -- I know you have

13  accounted for or you have computed or the investigators in

14  the case have computed losses totaling somewhere around $10

15  million. How much of that is unaccounted for?  Or do we know

16  how much of that is unaccounted for approximately?  Because

17  we know where some of it went.  Some of it went to purchase

18  property in the Bahamas for example.  But what happened to

19  the rest?

20          MS. McGUINN:  So the Agent is indicating obviously

21  they are having a hard time tracking down all of the assets

22  but he did start several companies and he was traveling quite

23  a bit lavishly.  The vehicles that I discussed, the homes

24  that he purchased.  But as far as the absolute direct

25  connection to that 10 million, at this point we don't have a

1    whole clear picture of every dollar that was -- that came

2    from that particular theft.

3           THE COURT:  And do you have any information

4    regarding why he may have returned to the United States

5    specifically?

6           MS. McGUINN:  All I know is that his sister lives

7    here in Elkridge.  I couldn't tell you why.  I don't know if

8    it is because something was going on with her, she was sick,

9    I don't know.  I just know that the day of the flight is the

10   day that the FBI -- he was -- his flight information was

11   certainly flagged for if and when he would return to the

12   United States and the flight came up the day of the flight.

13          THE COURT:  Understood.  Thank you, Ms. McGuinn.

14          Ms. Liu?

15          MS. LIU:  Good afternoon, Your Honor, thank you

16   very much.  I would like to start by addressing the

17   circumstances of the offense and I know that the statute

18   refers to the circumstances of the offense charged.  And the

19   Government has made a number of allegations surrounding

20   Girardi Keese and of course, there is quite a bit in the

21   media and elsewhere about Girardi Keese the law firm, but I

22   want to make a point that even on the papers charging my

23   client, he is not charged with any overarching fraud that

24   others at Girardi Keese may have committed.

25          The wire fraud charges are based on an allegation

1   that he embezzled money for his own benefit from Girardi

2   Keese.  So I don't think it is appropriate to take into

3   account all of the other allegations as yet unproven about

4   what else may have been happening at the law firm in which he

5   was working.

6           THE COURT:  Well doesn't the statute allow me to

7   consider past conduct?  Irrespective as to whether it was

8   criminal in nature? Whether it -- regardless as to whether it

9   was charged or not?  Past conduct.

10          MS. LIU:  It does, Your Honor, but that past

11  conduct as of yet there is no evidence on that other than

12  that he was a bookkeeper and he worked a Girardi Keese for a

13  length of time.  And the -- again if he is charged with

14  committing certain acts in this particular case and I submit,

15  Your Honor, that it would be unfair to consider all of the

16  other allegations that are out there about Girardi Keese.

17  Because at this point, he is not charged with those offenses.

18          THE COURT:  Okay.  I understand.

19          MS. LIU:  I also like to then turn to what I agreed

20  with the Government is the crux of the hearing today, which

21  is the risk of flight.  Mr. Kamon is not a risk of flight.

22  And I want to address one of the specific points that the

23  Government has just made.  First of all, it was suggested

24  that after the individual that the Government refers to as an

25  escort was interviewed by the Government that she tipped off

1    my client and that he then went to the Bahamas.

2            In fact, the timing was just the opposite based on

3    what is alleged in the affidavit.  It appears from that

4    recitation of the facts that he went to the Bahamas on

5    September 21st and that the individual the Government refers

6    to was interviewed on September 30th.  I also want to address

7    a few things about the Bahamas.  As the Government

8    acknowledges, there is an extradition treaty between the

9    United States and the Bahamas.

10           So if Mr. Kamon was trying to flee and put himself

11   outside the reach of the U.S. Government, he did a very bad

12   job of it.  He chose to go somewhere with an extradition

13   treaty.  He chose to purchase a home in the Bahamas in his

14   own name.  He was attempting to obtain residency there in his

15   own name and most of all, Your Honor, he returned to the

16   United States.  He was arrested at BWI airport not because he

17   was trying to leave the country but because he was

18   voluntarily coming back into the country and obviously had no

19   idea that this arrest warrant was waiting for him.

20           He does have a sister who lives in this district.

21   And he was coming back to see her.  There are a couple of

22   other things I would like to address as well with respect to

23   the risk of flight.  First of all, Mr. Kamon has worked with

24   counsel and has been cooperative with various legal

25   proceedings over the last several years.  He was previously

lnc                                                                    24

1   represented by an attorney named Richard Steinguard and then

2   he was represented by my firm.  The U.S. Attorney's office in

3   Chicago as Your Honor may know, received a referral from the

4   Federal District Court there, related to Girardi Keese and

5   Mr. Kamon's attorneys have been in touch with the U.S.

6   Attorney's office in Chicago and did not or were not told

7   that there was any pending there.  That is where they

8   believed that an investigation was pending if it was indeed

9   pending.

10        My partner, Jack DiCanio received a reach out from

11  the U.S. Attorney's office in Chicago on August 15th,

12  2002(sic) and called back several times and did not get a

13  return call.  And so we simply didn't realize that there was

14  again, I should say there was no attempt to try to dodge a

15  Federal investigation.

16        THE COURT:  What was the purpose of the call?

17        MS. LIU:  We don't know.  There was a reach out

18  saying please call and as I understand it from my partner, he

19  tried several times to reach the AUSA who called and just

20  didn't hear back.  And that was shortly in August of 2022.

21        THE COURT:  But it does sound like, at least

22  according to what Ms. McGuinn told me is that there had been

23  some contacts with the law firm.  I am not sure exactly what

24  the time frame of that is, you may be talking about a later

25  time frame.  But there were earlier contacts with the law

1   firm, correct?

2          MS. LIU:  There have been earlier -- I mean, Mr.

3   Kamon has had counsel since at least the spring of 2021.  And

4   again first Mr. Steinguard and then my partner, Mr. DiCanio

5   and the Law firm of Skadden, Arps.  I also want to point out

6   that the Girardi Keese Law Firm went into bankruptcy in late

7   2020.  And according to the Government's own allegations here

8   today, Mr. Kamon did not leave the country until September of

9   2022, that was almost 2 years later.

10          And so he was there from September -- late

11  September until he returned in early November.  That was a

12  period of about 5 or 6 weeks. And so if he were trying to

13  flee, he could have done so at any point in that two year

14  period.  He could have not returned to the United States. He

15  could have chosen to go somewhere that didn't have an

16  extradition treaty.

17          He could have tapped in to the various resources

18  that the Government alleges that he has.  We are certainly

19  not conceding any of the facts that the Government has

20  alleged today but the fact of the matter is Your Honor is

21  that he came back of his own accord.  He has the support

22  of --

23          THE COURT:  To Maryland?

24          MS. LIU:  Yes, Your Honor.

25          THE COURT:  Not to California.

1          MS. LIU:  Not to California.  To Maryland where his

2     sister lives, Your Honor.  He has not been employed in

3     California since 2020 so there was really no reason for him

4     to go back to California.  Although he does also have family

5     there who remain supportive of him.  We made an effort to

6     negotiate a potential bond package with the U.S. Attorney's

7     office in the Central District of California.

8          Four properties were put on the table as part of

9     that bond package.  There has been a suggestion that those

10    properties may have been purchased with "dirty money".  And

11    that is -- I want to point to two properties in particular.

12    One of them was the family home of Mr. Kamon's cousin.  There

13    is no evidence whatsoever that that cousin was in any way

14    involved in wrong doing.  And another property was a property

15    that Mr. Kamon inherited from his parents who unfortunately

16    were both deceased fairly recently.  And there is no

17    allegation that I am aware of or any evidence this parents

18    were or that property that his parents owned were somehow

19    purchased with dirty money.

20          THE COURT:  Who owns that property now?

21          MS. LIU:  It is inherited -- it has been inherited

22    by Mr. Kamon.

23          THE COURT:  Okay.

24          MS. LIU:  So as part of the -- our understanding is

25    that -- and we are still trying to confirm this, Your Honor

lnc                                                                    27

1     is that Mr. Kamon does have a cousin in California who is

2     willing to have Mr. Kamon live with him.  We would of course,

3     agree to the standard of conditions of release if he were to

4     be released today to make his way back to California to

5     address the charges there.  And there are a couple of other

6     things that I want to address that the Government has made.

7     I think there are a bit somewhat minor compared to some of

8     the things that we have already discussed but I do want to

9     make sure that they don't go unanswered.

10            There has been a lot of discussion about Mr. Kamon

11    liquidating his assets.  He has been unemployed since the

12    Girardi Keese law firm collapsed in 2020.  And so I don't

13    think it should be any surprise that he has been in need of

14    assets and resources.  He -- sorry, Your Honor, I just want

15    to make sure that I have covered all of my points here.  In

16    addition, Your Honor there is an allegation that he had four

17    mobile phones on him.

18            I personally have three on me at the moment.  And

19    an Ipad, so I don't know exactly where that -- I don't think

20    that that is necessarily an indication of wrongdoing.  At

21    least I hope not, Your Honor.  The Government has also

22    pointed out that Mr. Kamon traveled to 10 different countries

23    in the last 20 years.  That is about two international trips

24    a year on average and I submit, Your Honor, that that is not

25    terribly unreasonable either --

1          THE COURT:  Did you say 20 countries in the past 10

2     years or 10 countries in the past 20 years --

3          MS. LIU: I heard 10 different countries in the last

4     20 years.

5          THE COURT:  So that is one every two years?

6          MS. LIU:   That is --

7          THE COURT:  On average.

8          MS. LIU:  I think that is on average 2 countries a

9     year, I don't have information about what countries those

10    are.  But I don't -- I submit, Your Honor that it is not

11    unusual for someone who enjoys traveling to visit a couple of

12    countries a year.

13         THE COURT:  No, it is not unusual but I think if

14    that fact was offered to support the notion that he is not

15    unfamiliar with international travel.  Is an argument in

16    favor of a flight obviously.

17         MS. LIU:  Your Honor, I understand yes, what the

18    argument was but what that allegation was offered for.  But I

19    think I would simply restate that whether he is familiar with

20    intentional travel or not, he just didn't flee under these

21    facts. He was in the country for two years.  He then went to

22    the Bahamas for five weeks and then he came back.  And he

23    didn't come back to California because that was not where he

24    had a job and he came back to Maryland because that is where

25    his sister lives.

1          And so, I submit Your Honor, that given the -- as

2    the Government has acknowledged -- it does not typically ask

3    for detention in a wire fraud case, which this is and I

4    submit Your Honor that given the allegations in the

5    Government's complaint and affidavit, again focusing on the

6    specific allegations against Mr. Kamon which we certainly

7    don't agree with and the facts over the last two years since

8    the collapse of the Girardi Keese Law Firm that he is not a

9    flight risk and that Your Honor should release him today to

10   return to California to address the case that is there.

11         THE COURT:  Ms. Liu, I just wanted to make sure

12   that I understood what you said earlier with respect to the

13   timing.  You have made reference to events occurring in or

14   being described in paragraph 31 of the complaint. You said

15   that the timing was off in some kind of way. I think you made

16   reference to the witness being interviewed on September 30th?

17         MS. LIU:  Yes, Your Honor.  In paragraph 31, there

18   is an allegation that oh I see -- this is an allegation that

19   Federal investigators tried to contact the witness in or

20   around August 22nd and then the allegation is that he booked

21   a flight in September.  There was another paragraph 25 that

22   says that she was interviewed on September 30th, which is

23   after he left.

24         THE COURT:  Okay. Thank you.

25         MS. LIU:  And that was what I was referring to.

1              THE COURT:  Understood.  Let's see -- anyway of

2     explaining --

3              MS. LIU:  Your Honor, one more thing to add was

4     that my understanding is that Mr. Kamon had gone back and

5     forth from the Bahamas to the United States a couple of times

6     and that he returned on November 5th because of a specific

7     event relating to his family.  I don't want to get into the

8     specific details here in open court.  But of course, I am

9     happy to approach if that is helpful.

10             THE COURT:  What is the time frame with the travels

11    to the Bahamas?

12             MS. LIU:  Your Honor, my understand is that there

13    were several trips between May of 2022 and September relating

14    to the purchase of a home in the Bahamas.  And that the

15    reason for Mr. Kamon's failure to return on September 22nd

16    was because there was a delay relating to the purchase of

17    that home.

18             THE COURT:  Okay.  And do you have any way of

19    explaining the discrepant information that we have received

20    with regards to his resident status? You seem to be conceding

21    that he bought residential property in the Bahamas but

22    apparently he indicated to pre-trial services that he was

23    living with a sister who denies that he was living with her.

24             MS. LIU:  Could I have the Court's indulgence for a

25    moment, Your Honor?

1                    THE COURT:  Yes.

2          (Pause.)

3                    MS. LIU:  Your Honor, my understanding is that the

4     house in the Bahamas just closed a couple of weeks ago and so

5     until that point, my client didn't have a residence in the

6     Bahamas.  And so he was using his sister's address.

7                    THE COURT:  All right.  Thank you, Ms. Liu.

8                    Ms. McGuinn, do you have any response?

9                    MS. McGUINN: Just briefly, Your Honor, it is quite

10    differently to say you are living somewhere versus using

11    someone's address.  He told Ms. Martin that he was living

12    there which is quite different and more importantly never

13    said  a word to her that he had purchased a home in the

14    Bahamas and was planning to -- ultimately reside there. I

15    think that is quite deceptive as to trying to hide or not

16    know or have us all not know where he is.

17                  I think it is notable quite frankly that his own

18    law firm up until the 7th -- the day that we were first here,

19    didn't even know where he was.  Thought he was still living

20    in a house that he had already sold over a month prior. Your

21    Honor -- and moreover that that house in the Bahamas as

22    indicated from my previous presentation was purchased using

23    money that we know was stolen.

24                  Your Honor, the only -- I think the only way a

25    release could be reliable to this Court would be a third

lnc                                                                      32

 1    party custodian and right now, we don't have one.  We don't

 2    have a reliable one at all.  The sister had no idea where he

 3    was, where he was living.  Knew that he was using her house

 4    as an address but didn't know otherwise.  He just pops up on

 5    the day of, he purchases a flight and shows up here in the

 6    United States, as you said in  Maryland, not elsewhere -- in

 7    California.

 8              I think for today's purposes, we don't have any

 9    reliable that would allow a release that would ensure that he

10    would not flee, would not use whatever assets he has which

11    again we are still not even clear his financial picture --

12    and I would suggest given the nature of this particular

13    offense and the large dollar amount involved, there is

14    probably money put away places we may not even know, we just

15    don't know what he has access to.

16              For all of those reasons, Your Honor, the risk is

17    too high.  Perhaps it will be lower at some point in the

18    future.  But for today's proceeding, it is too high.  The

19    risk of flight is just too high. And for those purposes and

20    those reasons, Your Honor, including the weight of the

21    evidence against him under the factors on 3142, we would ask

22    that he be detained.

23              THE COURT:  Ms. McGuinn, do you have any

24    information regarding the liquidation of the assets with

25    respect to the timing of the liquidation of those assets?

1   Ms. Liu made the argument that he was liquidating assets due

2   to his unemployment status over the past couple of years. You

3   suggested that it was part of his flight plan.

4           MS. McGUINN:  So I will tell Your Honor the female

5   witness who was interviewed provided an extensive statement

6   as to her contact with the Defendant.  She indicated that in

7   the recent months leading up to the ultimate flight to the

8   Bahamas and purchase of the home that he had told he was

9   going to be liquidating all of his assets and then somehow

10  get that money to the Bahamas.  He actually at some point

11  asked if she would come and live with him there.

12          And actually at one point, indicated that

13  everything worked differently in the Bahamas and that

14  purchasing the home would be done through attorneys down

15  there.  The female had actually also been to -- with him in

16  the Bahamas in those months prior on a particular trip.  So

17  her statements so far that she has made to investigators have

18  been corroborated by the evidence that we are seeing

19  financially.

20          She indicated that he told her that he was going to

21  start liquidating her(sic) assets and lo and behold, he is

22  liquidating his assets.

23          THE COURT: Now I think I may have missed something

24  from your earlier presentation with respect to the use of

25  multiple phones.  I think you said something in connection

1  with witness statements about the use of multiple phones by

2  Mr. Kamon.

3            MS. McGUINN:  Yes.

4            THE COURT:  Can you repeat that, please.

5            MS. McGUINN:  Sure, Your Honor.  There is some

6  witness statements that he had started to become -- again my

7  choice of words, paranoid about the investigation that was

8  ongoing and was starting to cycle through phones.  And I

9  agree with counsel, I have more than one phone too.  But as

10 she indicated, her client is unemployed.  So it is kind of

11 unusual in -- when you put it together with everything the

12 fact that he had four different phones on an international

13 flight coming back to Maryland is somewhat suspicious.

14           THE COURT:  And these witnesses were persons

15 involved in the fraud scheme?

16           MS. McGUINN:  I believe they were some of his co-

17 schemers and witnesses as well as his female witness that we

18 spoke to and --

19           THE COURT:  Thank you, Ms. McGuinn.

20           MS. McGUINN:  Thank you.

21           THE COURT:  Ms. Martin, has this cousin -- I don't

22 know if you know who this cousin is, who has been offered

23 from California.  Has he or she been screened?

24           MS. MARTIN:  No, I have been provided no additional

25 information, Your Honor, since I wrote my report on Monday.

lnc                                                                          35

1          THE COURT:  All right.  Thank you.

2          Anything additional, Ms. Liu?

3          MS. LIU:  No, Your Honor.  I just want to again say

4    that there was a suggestion that my client simply popped up

5    at BWI.  And I contest that characterization.  He has been in

6    touch with his sister who lives in this district.  He was

7    coming back for reasons related to his family and again, he

8    came back.  And I think that fact Your Honor, cuts very, very

9    strongly against his being a risk of flight.  Especially

10   since the Government now has his passport.

11         THE COURT:  Thank you, Ms. Liu.  I think for all

12   intents and purposes, we are going to take a recess until

13   1:15.  But I am going to remain on the bench. Ms. Liu, if you

14   want to Mr. Kamon, we can put the husher on for you.  That is

15   fine.  But I will -- I just say that for counsel's purposes.

16   If you want to take a break until 1:15, you have the ability

17   to do that.  So we are on recess.

18         (Whereupon, at 1:08 p.m., a brief recess was taken

19   and at 1:20 p.m., the hearing was recalled.)

20         THE COURT:  All right, so this matter is before the

21   Court on the Government's motion for pre-trial detention

22   under Title 18 United States Code Section 3142.  The issue I

23   am presented with is whether conditions of pre-trial

24   supervision can be imposed that would reasonably assure the

25   safety of the community and the appearance of the Defendant,

lnc                                                                      36

1   Mr. Kamon for court proceedings as required. I have reviewed

2   the pre-trial services report and the criminal complaint

3   filed in the Central District of California.  The Defendant

4   is charged by that criminal complaint with wire fraud in

5   violation of Title 18 United States Code 1343 and is pending

6   trial.

7          A detention hearing here is warranted as noted by

8   Government Counsel pursuant to 3142(f)(2) because the

9   Government has  moved for detention and the case involves a

10  serious risk of flight for reasons discussed in detail during

11  the hearing here today.  The Government is indeed requesting

12  that the Defendant be detained pending trial based upon a

13  risk that the Defendant will not appear for future

14  proceedings.

15         The Court will order that the Defendant be detained

16  pending trial because I find by a preponderance of the

17  evidence that no condition or combination of conditions will

18  reasonably assure the appearance of the Defendant for future

19  proceedings.  And as has been discussed Mr. Kamon, I am

20  required to consider various factors that have been discussed

21  at length by your Counsel and by the Government Counsel

22  today. And I am going to just recite where I land on those

23  factors for you right now to give you the basis for my

24  ruling.

25         I have considered all of this available information

lnc                                                                      37

1    both from the pre-trial services report, the criminal

2    complaint and what I have heard from Counsel here today

3    regarding your history and characteristics, the nature and

4    circumstances of the offense charged and the weight of the

5    evidence against you.  I understand that you are

6    approximately 49 years old and that you have the wherewithal

7    for international interstate travel based upon very recent

8    travel that you have participated in and travel that you

9    participated in over the past several years.

10           As to your family ties, Mr. Kamon, I understand

11   that you have family both in California and in Maryland.

12   Specifically you have a sister who lives in Maryland.  One

13   significant factor in my determination here is that you claim

14   to pre-trial services to be living with your sister who lives

15   in Maryland over the past few months.  But it turns out that

16   your sister didn't know where you lived.  And it sounds like

17   many people didn't  know where you were during this recent

18   time period.

19           You previously lived in California.  But even if I

20   went the other way on this point, your length of residence in

21   this community has been brief.  Your length of residence in

22   California has been extensive but you have over the past

23   several months have sought to relocate from California.  So I

24   don't find that this is a factor that cuts in favor of

25   mitigating your risk of flight.

lnc                                                                        38

```
 1              As to your employment status, I understand that you
 2   have been unemployed for the past two years.  Perhaps in
 3   connection with the dissolution or bankruptcy status of the
 4   law firm that you were working for.  You had previously been
 5   employed at that law firm for many years but not withstanding
 6   your lack of employment, you appear by all indications to be
 7   a person of significant financial resources.  Very
 8   significant financial resources based upon properties that
 9   you own and an apparent -- a large amount of cash that you
10   may have on hand.
11              As to your criminal history, Mr. Kamon is correct,
12   there really is none to speak of in terms of past criminal
13   convictions.  But you are currently facing a very serious
14   Federal fraud charge pending in the Central District of
15   California which takes me to the nature and circumstances of
16   that offense.  It involves a multi-million dollar fraud and
17   embezzlement scheme occurring over the course of several
18   years.
19              I am informed that the guidelines range based upon
20   the factors in play in that fraud scheme, probably most
21   significantly the loss amount that pushes the sentencing
22   guidelines range up to 135 to 168 months, with the
23   understanding that the sentencing guidelines are advisory but
24   it does speak to a certainly gravity and a certain
25   seriousness and culpability in connection with the charge
```

 1   that you are currently facing.

 2         And the bottom line is that you are under threat of

 3   a very significant prison sentence that would be significant

 4   for even someone who has a very long criminal history.  It

 5   would be a long sentence by any account.  More troubling than

 6   just the specific and bear fact as suggested by the evidence

 7   proffered to me, but your involvement in this multi-year,

 8   multi-million fraud scheme is what you did with the resources

 9   that you have and with the resources that you have gained

10   through the fraud scheme in the recent months.

11         There is a great deal of evidence that has been

12   presented and discussed here today suggesting a flight plan.

13   A plan to flee apprehension based upon rising suspicion that

14   you would be implicated and related investigations of the law

15   firm that you were working for to include -- what I mean by

16   flight plan is that that flight plan would include

17   liquidation of your assets according to apparently reliable

18   witness statement.  Someone who is closely involved with you.

19   Included moving to the Bahamas, purchasing real estate in the

20   Bahamas, possibly for purposes of gaining lawful immigration

21   or resident status in that country.

22         Wiring large sums of money to the Bahamas,

23   amounting to at least $2.4 million.  Selling and liquidating

24   your property in California.  All to aide according to what

25   this witness said, all to aid you in this flight. Now, yes

1    this is the word of a person apparently corroborated by a lot

2    of the transactions that you admit that you conducted over

3    the past several months.  Although you argue that the reason

4    why you did that is because you needed to, the fact that they

5    just occurred over the past several months seems to suggest

6    that it may have more to do with what this witness said which

7    is that your rising suspicion that you will be implicated in

8    crimes that were under investigation.

9            Given that the liquidation of the assets occurred

10   primarily within this year and in fact within the past few

11   months suggests that it had less to do with your unemployment

12   status which spanned the past two years.  The weight of the

13   evidence in the case is very substantial as they typically

14   are in Federal cases including bank records and witness

15   statements.

16           But I don't find that as a significant factor

17   because it is not a factor that sort of sets this case apart

18   from a typical one. However, over all the history and

19   characteristics of you, the nature and circumstances of the

20   offense charged and the weight of the evidence in general

21   tend to suggest that you are a flight risk.  And I just want

22   to make sure that I have covered all of the reasons why I am

23   making that finding.  Hold on one moment.

24       (Pause.)

25           THE COURT:  Here are some smaller factors in

1    addition to the ones that I just named. I understand that

2    there has been a significant amount of international travel

3    by you over the past several years.  That is not suggestive

4    of a tendency to want to flee prosecution but it is

5    suggestive of you having the means and know how to flee.  If

6    you ever had the incentive to do so.  And a very high prison

7    sentence that you face -- that you are facing does provide

8    that incentive and the witness statement does seem to suggest

9    that incentive was a motivating factor for you in some of

10   your financial activities and travel over the past several

11   months.

12          Much has already been said about the actual

13   circumstances and facts of the case.  I mean, we talked about

14   embezzlement to enrich yourself with cash, upgrades to your

15   property and escort services.  Which apparently is how you

16   got the means and how you got the financial resources to buy

17   property in the Bahamas according to what has been proffered

18   to me.

19          The fact -- another fact related to the underlying

20   fraud is that your falsification of your firms books and

21   their internal records seems to suggest a lack of

22   trustworthiness, frankly.  And obviously a great deal of

23   trust would need to be placed in you by this Court in order

24   to release your -- order your release in the circumstances of

25   this case.

lnc                                                                                           42

1        Now, your Counsel quite appropriately made several

2   arguments against the notion that you were a flight risk

3   including the fact that the Bahamas is not an extradition or

4   has an extradition treaty with the United States suggesting

5   that if you wanted to flee effectively you could have gone to

6   a country that did not have the arrangement with the United

7   States.

8        That you bought the property that you bought in the

9   Bahamas under your own name.  But I think that while those

10  are factors suggesting that your flight plan was not complete

11  in the Bahamas, it may be that the Bahamas drew you to it for

12  other reasons including obviously it is well known attractive

13  scenery and the fact that more important is offered by the

14  prosecution here that it will allow you pretty easily to gain

15  lawful status there.

16       And it could have served as a launch pad to further

17  flight.  It would have been easier for you to flee from the

18  Bahamas than to fly from the United States given the

19  circumstances of the case.  It has been offered that you

20  returned to the United States but it is also in the same

21  breath been offered that you didn't know about this arrest

22  warrant.  And based upon your conduct and based upon the

23  evidence that has been presented to me is that I believe that

24  if you did know about the arrest warrant, your return would

25  have been unlikely.

1          Understand that you have, according to your

2    Counsel, cooperated to some degree with legal proceedings in

3    the past.  Given that the law firm that you work for has been

4    under investigation for quite some time.  However, it appears

5    that the same law firm didn't know where you were in the

6    recent time as your family members also didn't know where you

7    were.

8          It has been offered that you didn't leave the

9    country until many months after becoming aware of the

10   investigation but I don't think that cuts one way or the

11   other really because if you hadn't -- if you didn't leave at

12   any earlier point in time, that could have very well been

13   based upon the fact that leaving at that point in time when

14   you first became aware of the investigation, would have made

15   you look guilty and complacent in the fraud that was being

16   investigated.

17         So, based upon all of that, I do find by

18   preponderance of the evidence, that you are a risk of flight

19   and a risk of non-appearance. So the next question that I

20   must address is whether conditions of supervision can be set

21   that would adequately assure your appearance for future

22   proceedings.  Your Counsel offered the possibility of a bond

23   or money being offered for a bond.  But it has been -- it is

24   apparent to me that there is a very strong possibility that

25   any money that you offer for an adequate bond in this case,

lnc                                                                    44

1    to assure the Court that you would not flee, might be money

2    that doesn't belong to you, given the allegations of the

3    embezzlement and the fraud.

4          The third party custodian that is in Maryland would

5    be unfit because she apparently didn't know where you were

6    during the recent time period.  And you didn't make

7    discrepant information about -- you were provided discrepant

8    information about your resident status in connection with

9    that third party custodian.  The one that has been offered in

10   the Central District of California, I have no information

11   about to ensure myself that that person is trustworthy and

12   willing and able to take on the responsibilities of a third

13   party custodian.

14         Understand that an effort has been made to

15   negotiate a bond with another U.S. Attorney's office.

16   Nothing in my ruling is going to prevent any further

17   negotiation that you might make with that office.  And it may

18   be that you can continue to negotiate this matter.  That your

19   Counsel can continue to acquire information that would be

20   suggestive of your need to be or it would be appropriate for

21   you to be released.  And your Counsel would have the ability

22   once you are in a Central District of California to seek your

23   release there or even to appeal my ruling directly.

24         But at this point in time for the reasons that I

25   have just offered, I will order your detention based upon a

lnc                                                                        45

 1   finding that no conditions or combination of conditions can

 2   assure your appearance for a future court proceeding.  And I

 3   will enter a written order on the docket to reflect that

 4   ruling.

 5          Now, my understanding Ms. Liu is that Mr. Kamon has

 6   waived an identity hearing, is that correct?

 7          MS. LIU:  That is correct, Your Honor.

 8          THE COURT:  And Ms. McGuinn, I am not sure that I

 9   ever received a signed copy of the arrest warrant in this

10   case.  Do you have one?

11          MS. McGUINN:  Not on me at the time but I do have

12   one on my computer at the office, I can forward that to your

13   chambers.

14          THE COURT:  Okay.  I would appreciate that.  I will

15   wait to see that before ordering the remand.  Upon the

16   production of that arrest warrant and combination with the

17   fact that the -- Mr. Kamon has waived his identity hearing,

18   he would be appropriate for remand to the Central District of

19   California and I would enter that order under receipt of the

20   copy of the arrest warrant.

21          All right, I believe that covers everything. Is

22   there anything else for us to cover, Ms. McGuinn?

23          MS. McGUINN:  Not for this matter, Your Honor.

24          THE COURT:  Ms. Liu, do you have anything?

25          MS. LIU:  Your Honor just one other thing as we

1    mentioned at the hearing on Monday, Mr. Kamon has some back

2    practice and he has indicated that those continue to be an

3    issue in his current situation.  So I just wanted to

4    reiterate that.  I am happy to fill out another form if that

5    helps.

6              THE COURT:  Yes, please do that right now so we can

7    make sure that that paperwork is properly relayed.

8              MS. McGUINN:  Your Honor, I had a copy on my phone.

9    I am going to forward it to your chambers right now.

10             THE COURT:  Perfect.  Thank you.

11             All right.  Thank you for this, Ms. Liu.  Did you

12   complete this the other day?

13             MS. LIU:  Yes, Your Honor.

14             THE COURT:  Okay so it is basically the same form

15   again?

16             MS. LIU:  It is.

17             THE COURT: I apologize, I forgot that you had done

18   it already.

19             MS. LIU:  Thank you, Your Honor.

20             THE COURT: Is there anything else for us to cover,

21   Ms. McGuinn?  I think I asked that already.

22             MS. McGUINN:  No, Your Honor.  Thank you so much.

23             THE COURT:  Thank you all. You are excused.

24             (Whereupon, at 1:36 p.m., the hearing concludes.)

25

lnc                                                                                47

<u>C E R T I F I C A T E</u>

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

*Lisa N. Contreras   12-05-22*
_____
Lisa N. Contreras          Date
Certified Transcriber
Certificate No.:  CET**1251

EXHIBIT 2

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

155 NORTH WACKER DRIVE

CHICAGO, ILLINOIS 60606-1720

TEL: (312) 407-0700

FAX: (312) 407-0411

www.skadden.com

FIRM/AFFILIATE OFFICES

BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(312) 407-0516
DIRECT FAX
(312) 407-8523
EMAIL ADDRESS
CHARLES.SMITH@SKADDEN.COM

October 31, 2022

**BY EMAIL**

Alexander G. Tievsky
Edelson P.C.
350 N. LaSalle Street, 14th floor
Chicago, IL 60654
atievsky@edelson.com

  RE: *Edelson PC v. Girardi, et al.*, 20-cv-70115 (N.D.Ill.)

Dear Mr. Tievsky:

   On behalf of Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), a non-party to the above-referenced action (the "Litigation"), I write in response to the subpoena, dated October 7, 2022 (the "Subpoena") served on Skadden. This letter serves as Skadden's written response and objection to the Subpoena, which calls for the production of documents that are neither relevant to the claims and defenses in the Litigation nor reasonably likely to lead to the discovery of admissible evidence when we can provide the requested information without the expense of producing documents. Skadden also objects to the Subpoena to the extent it seeks documents already within the possession of your client or that could be obtained more easily from other parties to the Litigation or the other non-parties subpoenaed.

   We understand that your objective is to effect service on Mr. Christopher Kamon. As his contact information is not privileged, we are willing to provide what information we have without producing documents that contain this information, if any exist. Upon review of the information below, we are willing to meet and confer if you believe that the production of non-privileged documents in Skadden's

Alexander G. Tievsky
October 31, 2022
Page 2

possession, that you cannot obtain elsewhere, is necessary to obtain the material sought in the Subpoena.

In response to the Subpoena for documents containing the contact information of Mr. Christopher Kamon, Skadden has the following information:

- Last known address: 4030 Admirable Drive, Rancho Palos Verdes, CA 90275

- Last known phone number: 747-229-1821

- Last known email address: 911kamon@gmail.com

Skadden expressly reserves the right to supplement these responses. Skadden is willing to discuss the objections presented herein with counsel for Plaintiff for the purpose of resolving any disputes that may arise without the need for intervention by the Court.

If you have any questions, please call me at the number above.

Sincerely,

Charles F. Smith

| | |
|---|---|
| **From:** | Smith, Chuck <Charles.Smith@skadden.com> |
| **Sent:** | Monday, November 07, 2022 2:50 PM |
| **To:** | 'Alex Tievsky' |
| **Cc:** | Haberman, Lauren A; Eli Wade-Scott; Hannah Hilligoss; Amy Hausmann |
| **Subject:** | [Ext] RE: Letter re: Edelson PC v. Girardi, et al., #20-cv-07115 |

Alex,
We have confirmed that Skadden has no other address for Mr. Kamon.

Best,
Chuck

**Chuck Smith**
Partner
Skadden, Arps, Slate, Meagher & Flom LLP
155 North Wacker Drive | Chicago | Illinois | 60606-1720
T: +1.312.407.0516 | M: +1 847 323-0577
charles.smith@skadden.com

*pronouns: He/Him/His*

Skadden

---

**From:** Alex Tievsky <atievsky@edelson.com>
**Sent:** Tuesday, November 1, 2022 6:49 PM
**To:** Smith, Chuck (CHI) <Charles.Smith@skadden.com>
**Cc:** Haberman, Lauren A (NYC) <Lauren.Haberman@skadden.com>; Eli Wade-Scott <ewadescott@edelson.com>; Hannah Hilligoss <hhilligoss@edelson.com>; Amy Hausmann <abhausmann@edelson.com>
**Subject:** Re: [Ext] Letter re: Edelson PC v. Girardi, et al., #20-cv-07115

Chuck,

Thank you for your letter. We're aware that Mr. Kamon sold his interest in the Admirable Drive property in September. Can you please double check that you do not have other information regarding Mr. Kamon's present address or any other addresses he may use? If the answer is no, then a declaration to that effect would be appropriate.

Alex

**Edelson** PC
**Alexander G. Tievsky**
350 N LaSalle St, 14th Floor, Chicago, IL 60654
d 312.589.6379 · t 312.589.6370 · edelson.com

On Mon, Oct 31, 2022 at 2:48 PM Smith, Chuck <Charles.Smith@skadden.com> wrote:

Hello, Mr. Tievsky.  Please see the attached letter I'm sending on behalf of Chuck Smith.  The original is also being sent by U.S. Mail.

**Kim R. Taylor**
*Partner/Counsel Secretary*

**Skadden, Arps, Slate, Meagher & Flom LLP**

**155 North Wacker Drive | Chicago | Illinois | 60606-1720**
**T: +1.312.407.0866** | **F: +1.312.407.0411**
**kim.taylor@skadden.com**

--------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================


--------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===============================================================================

EXHIBIT 3

**Sent:**          Wednesday, December 08, 2021 10:04 AM
**To:**            Alex Tievsky; Emily Wall
**Cc:**            DiCanio, Jack P; Jay Edelson; Eli Wade-Scott; Amy Hausmann; Edith Matthai; Leigh Robie; Ryan Saba
**Subject:**       [Ext] RE: Urgent: Court Order in In Re Lion Air, No. 18-cv-07686 (N.D. Ill.)
**Attachments:**   12-8-21 C Kamon Declaration re Lion Air.pdf


Hello,

In response to this Court's order for Christopher Kamon to appear in Courtroom 2303 at 10:00 A.M. on December 9, 2021 in the matter of *In re: Lion Air Flight JT 610 Crash*, 18-cv-07686-TMD (N.D. Ill.), please find the attached declaration stating that Mr. Kamon intends to invoke his constitutional rights pursuant to the Fifth Amendment..

It is our understanding that this declaration shall excuse Mr. Kamon from the December 9, 2021 appearance.

Sincerely,

Matthew Tako


**Matthew J. Tako**
Associate
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue | Los Angeles | California | 90071-3144
T: +1.213.687.5108 | F: +1.213.621.5108
matthew.tako@skadden.com
🖨 Please consider the environment before printing this email.

---

**From:** DiCanio, Jack P (PAL)
**Sent:** Wednesday, December 8, 2021 8:48 AM
**To:** Alex Tievsky <atievsky@edelson.com>
**Cc:** Jay Edelson <jedelson@edelson.com>; Eli Wade-Scott <ewadescott@edelson.com>; Amy Hausmann <abhausmann@edelson.com>; Edith Matthai <EMatthai@romalaw.com>; Leigh Robie <LRobie@romalaw.com>; Ryan Saba <rsaba@rosensaba.com>; Emily Wall <Emily_Wall@ilnd.uscourts.gov>; Tako, Matthew J (LAC) <Matthew.Tako@skadden.com>
**Subject:** Re: Urgent: Court Order in In Re Lion Air, No. 18-cv-07686 (N.D. Ill.)

Hi Alex.  Thank you for the email.  We'll circulate that letter to this group today.  Best, J

Sent from my iPad


On Dec 8, 2021, at 9:38 AM, Alex Tievsky <atievsky@edelson.com> wrote:


Mr. DiCanio:

I'm sending this email pursuant to the instruction of Hon. Thomas Durkin in open court this morning. Judge Durkin has asked me to inform you that Christopher Kamon is ordered to appear tomorrow

1

morning at 10:00 a.m. in courtroom 2303, 219 S Dearborn Street, Chicago, IL. Mr. Kamon will be excused from this appearance upon receipt of a letter from you confirming that he is exercising his Fifth Amendment right not to testify.

Judge Durkin's courtroom deputy, Emily Wall, is copied on this email.

Best,
Alex Tievsky

Alexander G. Tievsky | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.589.6379 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
atievsky@edelson.com | www.edelson.com

CONFIDENTIALITY AND LIABILITY FOR MISUSE.
The information contained in this communication is the property of Edelson PC.  It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s).  Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited.  If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.
Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

---------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

===========================================================================

## **AFFIDAVIT OF CHRISTOPHER KAMON**

I, Christopher Kamon, hereby state under penalty of perjury that, if called as a witness in pending contempt proceedings regarding Keith Griffin and David Lira in *In re: Lion Air Flight JT 610 Crash*, 18-cv-07686-TMD (N.D. Ill.), I would follow the advice of my counsel and invoke my constitutional rights to remain silent.

Dated this 8th day of December, 2021, in Rancho Palos Verdes, California.

_____
CHRISTOPHER KAMON

1              Edelson firm agree with that?

2              MR. EDELSON:  Correct.

3              THE COURT:  Attorneys for Griffin and Lira agree with

4     that?

5              MS. MATTHAI:  Yes, Your Honor.

6              MR. SABA:  Yes, Your Honor.

7              THE COURT:  All right.  And Chris Kamon, who is

8     apparently the CFO or bookkeeper or some type of financial

9     person at Girardi Keese, I don't know if I had the attorney

10    for Mr. Kamon on the line to acknowledge that he would take

11    the Fifth Amendment -- exercise the Fifth Amendment privilege

12    if called as a witness.  Is that your understanding he would?

13             MR. EDELSON:  Correct, Your Honor.

14             THE COURT:  Did you have communications with his

15    attorney?

16             MR. TIEVSKY:  So I did speak to his attorney at

17    Skadden.  I explained that Mr. Girardi had taken the Fifth and

18    that I knew Mr. Kamon had taken the Fifth in other

19    proceedings, but he did not specifically represent to me that

20    Mr. Kamon would take the Fifth in this proceeding.

21             THE COURT:  Who is his attorney?

22             MR. TIEVSKY:  It's Jack DiCanio at Skadden Arps.

23             THE COURT:  Okay.  Have you had an actual

24    representation from his attorney that he would exercise his

25    Fifth Amendment privilege in these proceedings if called?

1          MS. MATTHAI:  The representation that was made to me

2  was that Mr. Kamon did not wish to come to these proceedings.

3  And he did not specifically tell me that he would take the

4  Fifth.  He gave a very Skadden-esque answer to that question.

5          THE COURT:  All right.  I won't even ask to follow up

6  on that.

7          How about for Mr. Griffin?

8          MR. SABA:  Your Honor, I have not communicated with

9  this lawyer, but I can tell you that he did take the Fifth

10  Amendment privilege in a deposition in which it occurred in

11  the bankruptcy court.

12          THE COURT:  Okay.  Here's what we're going to do.

13          Contact the attorney for Mr. Kamon, the attorney at

14  Skadden Arps.  Let that person know that Mr. Kamon will be due

15  in this Court tomorrow morning at 10:00 absent a letter from

16  the attorney indicating that his client will exercise his

17  Fifth Amendment privilege if called as a witness.  Otherwise,

18  he's here tomorrow morning.  Okay?  I expect we'll get a

19  letter, but that's the way we're going to do it because I want

20  it on the record.  I don't want any lingering -- there was a

21  request by one of the attorneys saying that Mr. Griffin and

22  Mr. Kamon were unavailable.  I want to make sure that

23  Mr. Kamon is truly unavailable -- I'm sorry -- Mr. Girardi and

24  Mr. Kamon are unavailable.  Mr. Girardi is unavailable because

25  of his -- exercising his Fifth Amendment privilege.  I want to

1    make sure that's true with Mr. Kamon before we let him go.

2          MR. TIEVSKY:  I could send an e-mail to Mr. DiCanio

3    now.

4          THE COURT:  Please do that.  Let me know what

5    response you get.  It's got to be a letter or an e-mail

6    officially from an attorney from Mr. Kamon saying if called as

7    a witness in this proceeding he would exercise his Fifth

8    Amendment privilege.  Absent that, he's here tomorrow morning

9    at 10:00.

10          Okay.  Thank you.

11          MR. EDELSON:  Thank you, Your Honor.

12          THE COURT:  All right.  Ms. Matthai.

13          MS. MATTHAI:  Thank you.

14          Good morning.  We thank you for having this in-person

15   hearing and for holding this matter in abeyance until we could

16   come here personally despite the troubles that the entire

17   country has had for the last almost two years now.

18          This Court has defined a scope of this hearing that

19   it's a fact-finding exercise.  However, I think it is

20   important to just touch on a couple of points, that it is a

21   contempt hearing.  It is not a hearing on a violation of an

22   injunction.  Two different sets of laws apply.  And it's also

23   important as we go through the statements and the witnesses,

24   it's going to take a careful ear to hear what is said.

25          Repeatedly, Mr. Edelson used the words "they."  This

EXHIBIT 4

# PACIFIC PREMIER BANK®

**STATEMENT OF ACCOUNT ACTIVITY**
866-353-1476
www.ppbi.com

**STAR EMERALD, LLC**
**4030 ADMIRABLE DR**
**RANCHO PALOS VERDES CA 90275-6030**

| Page | 1 of 2 |
|---|---|
| Branch | 145 |
| Account Number: | |
| Date | 08/31/2022 |

EM

| EXECUTIVE 50 CHECKING | | Acct | |
|---|---|---|---|

### Summary of Activity Since Your Last Statement

| | | | |
|---|---|---|---|
| Beginning Balance | 8/01/22 | 1,383,343.12 | |
| Deposits / Misc Credits | 0 | .00 | |
| Withdrawals / Misc Debits | 11 | 1,383,005.35 | |
| ** Ending Balance | 8/31/22 | 337.77 | ** |
| Service Charge | | 5.00 | |
| Average Collected Balance | | 401,795 | |

## Withdrawals and Debits

| Date | Deposits | Withdrawals | Activity Description |
|---|---|---|---|
| 8/10 | | 1,382,515.00 | BENE:BAYCOURT CHAMBERS TRN:P202208100069544 |
| 8/10 | | 50.00 | OUTGOING WIRE FEE-P202208100069544 |
| 8/31 | | 5.00 | BALANCE REQUIREMENT FEE |

## ATM /POS Transactions



80897

Il.l.ll....l.ll..l.l.l.l..ll
BIRCH LEASING COMPANY LLC
4030 ADMIRABLE DR
RANCHO PALOS VERDES CA 90275

*Commercial Checking* statement

**July 1, 2022** to **July 31, 2022**
**Account number**

## Account summary

| | |
|---|---|
| **Beginning balance** on July 1, 2022 | **$887,757.91** |
| Less withdrawals | |
| ATM/Debit Card withdrawals | -$24,875.82 |
| Electronic (EFT) withdrawals | -$190,000.00 |
| Transfers to other accounts | -$33,000.00 |
| **Ending balance** on July 31, 2022 | **$639,882.09** |

**Call**
(800) 522-2265
**Visit our web site**
www.comerica.com

**Write to us**
COMERICA BANK
21153 HAWTHORNE BLVD
TORRANCE,CA 90503-4597

The Account Balance Fee for this statement period for this account is $0.125/$1,000.

Page 1 of 3

*Commercial Checking* statement
July 1, 2022 to July 31, 2022

## *Commercial Checking* account details: ██████

## ATM/Debit Card transactions this statement period

Bank

███████████████████████████████████████

## Electronic withdrawals this statement period

Reference numbers

| Date | Amount ($) | Activity | Customer | Bank |
|---|---|---|---|---|
| Jul 27 | -190,000.00 | Wire # 014785 Bnf Baycourt Chamb Fed # 002069 | | ████ |

**Total Electronic Withdrawals: -$190,000.00**
**Total Number of Electronic Withdrawals: 1**

## Transfers to other accounts this statement period

███████████████████████████████

**Total Transferred to Other Accounts: -$33,000.00**
**Total Number of Transfers to Other Accounts: 6**

## Lowest daily balance

Your lowest daily balance this statement period was **$639,882.09**
on **July 29, 2022**.

80897

||.|.||....||.||..|.|.|.|.|.|
BIRCH LEASING COMPANY LLC
4030 ADMIRABLE DR
RANCHO PALOS VERDES CA 90275

## *Commercial Checking* statement

**November 1, 2022** to **November 30, 2022**
**Account number** ▇▇▇▇▇▇▇

## Account summary

| | |
|---|---|
| **Beginning balance** | |
| **on November 1, 2022** | **$6,217.35** |
| Plus deposits | |
| Transfers from other accounts | $700,890.00 |
| | |
| Less withdrawals | |
| ATM/Debit Card withdrawals | -$5,385.98 |
| Electronic (EFT) withdrawals | -$700,000.00 |
| Fees and service charges | -$42.30 |
| | |
| **Ending balance** | |
| **on November 30, 2022** | **$1,679.07** |

**To contact us**

**Call**
(800) 522-2265
**Visit our web site**
www.comerica.com

**Write to us**
COMERICA BANK
21153 HAWTHORNE BLVD
TORRANCE,CA 90503-4597

**Important information**

The Account Balance Fee for this statement period for this account is $0.125/$1,000. Effective 1/1/23, the 10% reserve requirement on investable balances will be discontinued and the following fee changes will be in effect: $29/month Account Maintenance, $13/month Paper Statement, $10/each Foreign Check Processing Fee. The following Sweep fees will apply to all balances: $175 per account/month Sweep to Investment Only, $250 per account/month Sweep to Loan Only and $300 per account/month Sweep to Investment and Loan.

**Thank you**

***Commercial Checking*** statement
**November 1, 2022 to November 30, 2022**



# *Commercial Checking* account details: ▮▮▮▮

## Transfer from other accounts this statement period

| Date | Amount | Activity | | Bank reference number |
|---|---|---|---|---|
| Nov 04 | 700,000.00 | Web Funds Transfer From Account | Xxxxxx2159 | WB11102497 |
| Nov 04 | 890.00 | Web Funds Transfer From Account | Xxxxxx2159 | WB11107993 |
| **Total Transferred from Other Accounts: $700,890.00** | | | | |
| **Total Number of Transfers from Other Accounts: 2** | | | | |

## ATM/Debit Card transactions this statement period



## Electronic withdrawals this statement period

| | | | Reference numbers | |
|---|---|---|---|---|
| Date | Amount ($) | Activity | Customer | Bank |
| Nov 04 | -700,000.00 | Wire # 003761 Bnf Primus Trust C Fed # 000380 | | ▮▮▮▮ |
| **Total Electronic Withdrawals: -$700,000.00** | | | | |
| **Total Number of Electronic Withdrawals: 1** | | | | |

## Fees and service charges this statement period

| Date | Amount ($) | Activity | Bank reference number |
|---|---|---|---|
| Nov 14 | -42.30 | Service Charge | 0000036455 |
| **Total Fees and Service Charges: -$42.30** | | | |
| **Total Number of Fees and Service Charges: 1** | | | |

## Lowest daily balance



Your lowest daily balance this statement period was **$1,304.25** on **November 1, 2022**.

```
07/27/2022          DAILY TRANSACTION LOG BY SEQ         REPORT ID:  WTR#P105
21:10:01            TRN: ███████████             PAGE:     84742


RCVD FROM BIRCH LEASING COMPANY LLC     4030 ADMIRABLE DR
SENDER'S DDA # ███████████


TRN REF #: 20220727-00014785
-------------------------------------------------------------------------
        **** MESSAGE ENVELOPE ****              ( Bank : 048 )

                                        SND DATE: 22/07/27
SRC:VRE CALLER:KAMON, CHRIS                     EXT:

RPT#        AMT:190,000.00          CUR:USD                  TRDR#
TEST: DUE:               TYP:FTR/1000 FNDS:S CHG:DB:A CD:N COM:N CBL:N
-------------------------------------------------------------------------
DBT ███████████                  CDT ███████████            ADV:FED
DEBIT VAL: 22/07/27              CREDIT VAL: 22/07/27
DEPT:95836                       JPMORGAN CHASE BANK, NA
BIRCH LEASING COMPANY LLC        NEW YORK, NY
4030 ADMIRABLE DR
RANCHO PALOS VERDES CA  90275    COUNTRY OF RESIDENCY: US
COUNTRY OF RESIDENCY: US         BNF BANK:███████████              WIR:
SPECIAL INSTRUCTIONS:            SCOTIABANK (BAHAMAS) LTD
AGR 6/28/22 DH                   SCOTIABANK BUILDING
                                 RAWSON SQUARE
                                 NASSAU,BS-NOSCBSNS
                                 BNF:███████████            CHG:  BK?N
                                 BAYCOURT CHAMBERS


                                 BNF MAILING COUNTRY: BS


     **** CREDIT PAYMENT MESSAGE TEXT ****

{1510} Type/Subtype Code:
        Type Code:              10 (Transfer of funds)
        Subtype Code:           00 (Regular transfer)

{2000} Amount:                  $190,000.00

{3100} Sending Bank:
        ABA number:             ███████████
        Short name:             COMERICA CALIFORNI
        ABA lookup (AUX):       COMERICA BANK
                                SAN JOSE, CA

{3320} Sender Reference:        ███████████
```

```
07/27/2022        DAILY TRANSACTION LOG BY SEQ          REPORT ID:  WTR#P105
21:10:01          TRN: ██████████████             PAGE:      84743


{3400} Receiving Bank:
         ABA number:              ████████████
         Short name:              JPMCHASE
         ABA lookup (AUX):        JPMORGAN CHASE BANK, NA
                                  NEW YORK, NY

{3600} Business Function Code:    CTP (Customer transfer plus)

{4100} Beneficiary's Bank:        ████████████
                                  SCOTIABANK (BAHAMAS) LTD
                                  SCOTIABANK BUILDING
                                  RAWSON SQUARE
                                  NASSAU,BS-NOSCBSNS

{4200} Beneficiary:               ████████████
                                  BAYCOURT CHAMBERS

{4320} Reference for Beneficiary: ████████████████

{5000} Originator:                ██████████████
                                  BIRCH LEASING COMPANY LLC
                                  4030 ADMIRABLE DR
                                  RANCHO PALOS VERDES CA  90275



     *** MESSAGE TEXT ***

2!GJS587!0!!!!!!*^1^VRE^^D^048:1895321972^^



     MESSAGE HISTORY SEQUENCE
---------------------------------
048 is the owning bank. Priority:
         *SYS_MEMO          GJS587 - CB CHRIS KAMON
         REF_INDEX          REF #: ████████████  27-JUL-2022 15:24:40.83
     MTRANSFTRENT_LOG       OPRID: GJS587  TIME: 27-JUL-2022 15:24:40.83
         SYS_MEMO           *CVD:15 DVD:13 PSD:100 SSD:100 DBD:1 CBD:1
         *DDA_INQ_DBT
         *GL__INQ_CDT
         *ADR_MSG_QUE       TEXT: ████████████████
         Memo: DBT/126612
002      *DBT_AUT
002       CALLBACKQ     DEQ
         Memo: Rsn: ACNRP      ENT
002MTRANSCALLBACK_LOG       OPRID: SXG003  TIME: 27-JUL-2022 15:50:22.11
         Memo: Contact: KAMON, CHRIS, Via-Pin 22645
         *SYS_MEMO          Stop_Check msg routed to EXTERNAL STOP SERVER 27-JUL
-2022 15:50:22.11
```

```
08/10/2022          DAILY TRANSACTION LOG BY SEQ        REPORT ID:  WTR#P105
21:08:42            TRN: ████████████            PAGE:       69523


RCVD FROM BIRCH LEASING COMPANY LLC    4030 ADMIRABLE DR
SENDER'S DDA # ████████


TRN REF #: ████████████████
--------------------------------------------------------------------------
        **** MESSAGE ENVELOPE ****           ( Bank : 048 )

                                        SND DATE: 22/08/10
SRC:VRE CALLER:KAMON, CHRIS             EXT:

RPT#        AMT:683,000.00         CUR:USD                TRDR#
TEST: DUE:                  TYP:FTR/1000 FNDS:S CHG:DB:A CD:N COM:N CBL:N
--------------------------------------------------------------------------
DBT ████████████           CDT ████████████           ADV:FED
DEBIT VAL: 22/08/10             CREDIT VAL: 22/08/10
DEPT:95836                      JPMORGAN CHASE BANK, NA
BIRCH LEASING COMPANY LLC       NEW YORK, NY
4030 ADMIRABLE DR
RANCHO PALOS VERDES CA 90275    COUNTRY OF RESIDENCY: US
COUNTRY OF RESIDENCY: US        BNF BANK: ████████████         WIR:
SPECIAL INSTRUCTIONS:           SCOTIABANK (BAHAMAS) LTD
AGR 6/28/22 DH                  SCOTIABANK BUILDING
                                RAWSON SQUARE
                                NASSAU,BS
                                BNF: ████████████          CHG:  BK?N
                                BAYCOURT CHAMBERS


                                BNF MAILING COUNTRY: BS


     **** CREDIT PAYMENT MESSAGE TEXT ****

{1510} Type/Subtype Code:
        Type Code:              10 (Transfer of funds)
        Subtype Code:           00 (Regular transfer)

{2000} Amount:                  $683,000.00

{3100} Sending Bank:
        ABA number:             ████████
        Short name:             COMERICA CALIFORNI
        ABA lookup (AUX):       COMERICA BANK
                                SAN JOSE, CA

{3320} Sender Reference:        ████████████
```

```
08/10/2022         DAILY TRANSACTION LOG BY SEQ        REPORT ID:  WTR#P105
21:08:42        TRN: ██████████████               PAGE:    69524


{3400} Receiving Bank:
        ABA number:           ██████████████
        Short name:           JPMCHASE
        ABA lookup (AUX):     JPMORGAN CHASE BANK, NA
                              NEW YORK, NY

{3600} Business Function Code:   CTP (Customer transfer plus)

{4100} Beneficiary's Bank:
                              SCOTIABANK (BAHAMAS) LTD
                              SCOTIABANK BUILDING
                              RAWSON SQUARE
                              NASSAU,BS


{4200} Beneficiary:
                              BAYCOURT CHAMBERS


{4320} Reference for Beneficiary:   ████████████████

{5000} Originator:
                              BIRCH LEASING COMPANY LLC
                              4030 ADMIRABLE DR
                              RANCHO PALOS VERDES CA  90275


    *** MESSAGE TEXT ***

2!EAJ000!0!!!!!!*^1^VRE^^D^048:1895321972^^



    MESSAGE HISTORY SEQUENCE
---------------------------------
048 is the owning bank. Priority:
        REF_INDEX      REF #: ████████████   10-AUG-2022 15:04:46.51
    MTRANSFTRENT LOG      OPRID: EAJ000  TIME: 10-AUG-2022 15:04:46.51
        SYS_MEMO          *CVD:15 DVD:13 PSD:100 SSD:100 DBD:1 CBD:1
        *DDA_INQ_DBT
        *GL__INQ_CDT
        *ADR_MSG_QUE      TEXT: ████████████████
        Memo: DBT/126612
002     *DBT_AUT
002     *SYS_MEMO         002:CJS995-LVM FOR CHRIS X7934 4.03
002     CALLBACKQ    DEQ
        Memo: Rsn: ACNRP      ENT
002MTRANSCALLBACK_LOG      OPRID: GJS587  TIME: 10-AUG-2022 16:28:39.59
        Memo: Contact: KAMON, CHRIS, Via-Pin 22645
        *SYS_MEMO         Stop_Check msg routed to EXTERNAL STOP SERVER 10-AUG
-2022 16:28:39.59
```

```
11/04/2022          DAILY TRANSACTION LOG BY SEQ          REPORT ID:  WTR#P105
20:45:18            TRN: ███████████                      PAGE:     21277


RCVD FROM BIRCH LEASING COMPANY LLC     4030 ADMIRABLE DR
SENDER'S DDA # ████████


TRN REF #: ████████████
-----------------------------------------------------------------------------
        **** MESSAGE ENVELOPE ****              ( Bank : 048 )

                                        SND DATE: 22/11/04
SRC:VRE CALLER:KAMON, CHRIS             EXT:

RPT#          AMT:700,000.00            CUR:USD                  TRDR#
TEST: DUE:                   TYP:FTR/1000 FNDS:S CHG:DB:A CD:N COM:N CBL:N
-----------------------------------------------------------------------------
DBT ██████████████         CDT ██████████         ADV:FED
DEBIT VAL: 22/11/04                CREDIT VAL: 22/11/04
DEPT:95836                         JPMORGAN CHASE BANK, NA
BIRCH LEASING COMPANY LLC          NEW YORK, NY
4030 ADMIRABLE DR
RANCHO PALOS VERDES CA  90275      COUNTRY OF RESIDENCY: US
COUNTRY OF RESIDENCY: US           INTER BK:S/BBRUBEBB
SPECIAL INSTRUCTIONS:              ING BELGIUM NV/SA (FORMERLY BANK BR    WIR:N
AGR 6/28/22 DH                     USSELS LAMBERT SA), BRUSSELS
                                   AVENUE MARNIX 24
                                   BRUSSELS,BE
INS PTY:/                          COUNTRY OF RESIDENCY: BE
                                   BNF BANK:S/TAKBHUHB              WIR:N
                                   MTB MAGYAR TAKAREKSZOVETKEZETI BANK
                                   PETHENYI KOZ 10
                                   BUDAPEST,HU
                                   COUNTRY OF RESIDENCY: HU
                                   BNF:/HU7650440016100377130000 CHG:  BK?N
                                   0000
                                   PRIMUS TRUST CORP


                                   BNF MAILING COUNTRY: HU
                                   ORIG TO BNF INFO:
                                   CONTRIBUTION TO PRIMUS ALL WEATHER
                                   TRUST



    **** CREDIT PAYMENT MESSAGE TEXT ****

{1510} Type/Subtype Code:
        Type Code:              10 (Transfer of funds)
```

```
11/04/2022        DAILY TRANSACTION LOG BY SEQ        REPORT ID:  WTR#P105
20:45:18          TRN: ██████████████              PAGE:     21278

           Subtype Code:                00 (Regular transfer)

{2000} Amount:                          $700,000.00

{3100} Sending Bank:
           ABA number:       ████████████
           Short name:       COMERICA CALIFORNI
           ABA lookup (AUX): COMERICA BANK
                             SAN JOSE, CA

{3320} Sender Reference:     ██████████████

{3400} Receiving Bank:
           ABA number:       █████████
           Short name:       JPMCHASE
           ABA lookup (AUX): JPMORGAN CHASE BANK, NA
                             NEW YORK, NY

{3600} Business Function Code:          CTP (Customer transfer plus)

{4000} Intermediary Bank:    B/BBRUBEBB
                             ING BELGIUM NV/SA (FORMERLY BANK BR
                             USSELS LAMBERT SA), BRUSSELS
                             AVENUE MARNIX 24
                             BRUSSELS,BE

{4100} Beneficiary's Bank:   B/TAKBHUHB
                             MTB MAGYAR TAKAREKSZOVETKEZETI BANK
                             PETHENYI KOZ 10
                             BUDAPEST,HU

{4200} Beneficiary:          ████████████████████████████
                             PRIMUS TRUST CORP

{4320} Reference for Beneficiary:  ██████████████

{5000} Originator:           ████████████
                             BIRCH LEASING COMPANY LLC
                             4030 ADMIRABLE DR
                             RANCHO PALOS VERDES CA  90275

{6000} Originator to Beneficiary Info: CONTRIBUTION TO PRIMUS ALL WEATHER
                             TRUST


      *** MESSAGE TEXT ***

2!jfp772!0!!!!!!*^1^VRE^^D^048:1895321972^^
```

# EXHIBIT 5

**Important:**  The Public Records and commercially available data sources used on reports have errors.  Data is sometimes entered poorly, processed incorrectly and is generally not free from defect.  This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified.  For Secretary of State documents, the following data is for information purposes only and is not an official record.  Certified copies may be obtained from that individual state's Department of State.  The criminal record data in this product or service may include records that have been expunged, sealed, or otherwise have become inaccessible to the public since the date on which the data was last updated or collected.

Accurint does not constitute a "consumer report" as that term is defined in the federal Fair Credit Reporting Act, 15 USC 1681 et seq. (FCRA).  Accordingly, Accurint may not be used in whole or in part as a factor in determining eligibility for credit, insurance, employment or another permissible purpose under the FCRA.

**Your DPPA Permissible Use:**  Court, Law Enforcement, or Government Agencies
**Your Secondary DPPA Permissible Use:**  No Permissible Purpose
**Your GLBA Permissible Use:**  Law Enforcement Purposes
**Your DMF Permissible Use:**  Legitimate Business Purpose Pursuant to a Law, Government Rule, Regulation, or Fiduciary Duty

## Comprehensive Business Report

**Date:** 12/20/22
Company Name: **HAMMER AND WOOD**
Address:  **5625 CRESCENT PARK, PLAYA VISTA, CA 90094-2209, LOS ANGELES COUNTY**
Phone:  **310-766-1681**
URL:  **HAMMERANDWOOD.COM**

**Business Summary:**

LexID® Business Legal Entity: **0643-4116-9341**
Business Status:   **(No recent public filings on file)**
Established:  **2015** (4 yrs in Business)
Business Activity:  **02/06/2015 - 02/24/2019**
SIC:  **24990000 -**

**Name Variations:**

Company Name:  **HAMMER AND WOOD**

**TIN Variations:**

[None Found]

**Parent Company:**

[None Found]

⊖ **Business Filings:**

**Industry Information:**
SIC Code: **2499**
SIC Description: **Wood Products, Nec**

SIC Code: **7389**
SIC Description: **Business Services, Nec**

**Corporation Filings:**
[None Found]

**Registered Agents:**
[None Found]

**Business Registration:**
Name: **HAMMER AND WOOD**
Address: **5625 CRESCENT PARK W APT 306, PLAYA VISTA, CA 90094-2209**
Filing Number: **2015033589**
Corporation Code: **Fictitious Name**
Filing Date: **02/06/2015**

**UCC Filings for Business:**
[None Found]

**Associated Businesses:**
[None Found]

**Connected Businesses:**
Name: **HAMMER AND WOOD**
Address: **14311 CERISE AVE STE 106, HAWTHORNE, CA 90250-0603**

Name: **ROYAL PARQUET**
Address: **16930A VALLEY VIEW AVE, LA MIRADA, CA 90638-5826**

⊖ **Associated People:**
**Business Contacts:**
**Current Individuals:**
  [None Found]

**Prior Individuals:**
  [None Found]

**Executives:**
**Current Executives:**
  [None Found]

**Prior Executives:**
  Name: NELSON KUO
  Contact Title - **OFFICER**

⊖ **Assets:**
**Motor Vehicles:**
[None Found]

**Properties:**
[None Found]

**FAA Aircrafts:**
**Current Aircraft(s):**
  [None Found]

**Prior Aircraft(s):**
  [None Found]

**Watercrafts:**
**Current Watercrafts:**
  [None Found]

**Prior Watercrafts:**
  [None Found]

BRAVO'S CONSTRUCTION
1439 W JEFFERSON BLVD
LOS ANGELES, CA 90007-3422

1108

16-24/1220 4875

DATE Oct/31/2017

PAY TO THE ORDER OF Hammer & Wood                                        $ 10,000

Ten Thousand & NO/100                                                    DOLLARS

Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR Acct#698798985                          Lisaro Bravo

⑇000000⑇108⑇ ⑇122000247⑇ 6939825110⑇

TO ACCOUNT OF
THE NAMED PAYEE
FOR DEPOSIT ONLY
Chase Bank, N.A.

REQUEST 00000000008771773     10000.00
20171031 000008816905458+
ACCT 000006939825110+
REQUESTOR U751334
27136056  09/29/2022 Research 27136202 HOGAN HISTORICAL: 0000000000693982511001

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

**BRAVO'S CONSTRUCTION**
1439 W JEFFERSON BLVD
LOS ANGELES, CA 90007-3422

1123
16-24/1220 4875

DATE Nov 16 2017

PAY TO THE ORDER OF  Hammer & Wood                    $ 10,000

Ten Thousand & No/100                    DOLLARS

Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR Acct # 698798985                    Siero Bravo

⑈000000⑈⑈23⑈ ⑈⑈⑈22000247⑈ 693982511◻

Jr.Morgan Chase Bank, N.A.
FOR DEPOSIT ONLY
TO ACCOUNT OF
THE NAMED PAYEE
1123

REQUEST 00000000008771773    10000.00
20171116 000008612415585+
ACCT 000006939825110+
REQUESTOR U751334
27136056  09/29/2022 Research 27136202 HOGAN HISTORICAL: 0000000000693982511001

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

**BRAVO'S CONSTRUCTION**
1439 W JEFFERSON BLVD
LOS ANGELES, CA 90007-3422

1131

16-24/1220 4875

DATE Nov 29/2017

PAY
TO THE
ORDER OF  Hammer & Wood                              $ 15,000

fifteen Thousand & No/100                          DOLLARS

Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR Acct# 698798985                    Isidro Bravo

⑈000000 1131⑈ ⑆122000247⑆ 6939825110⑈

REQUEST 00000000008771773    15000.00
20171129 000008810090412+
ACCT 000006939825110+
REQUESTOR U751334
27136056  09/29/2022 Research 27136202 HOGAN HISTORICAL: 0000000000693982511001

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

**BRAVO'S CONSTRUCTION**
1439 W JEFFERSON BLVD
LOS ANGELES, CA 90007-3422

1163

16-24/1220 4875

DATE Jan/11/2018

PAY TO THE ORDER OF Hammer & Wood                    $15,000

fifteen Thousand & No/100                         DOLLARS

Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR Acct 698798985                    Isidro Bravo

⑈000000⑈⑈63⑈ ⑈⑈⑈22000247⑈ 693982511⑈0⑈

CREDIT TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

REQUEST 00000000008771773     15000.00
20180111 000008414647409+
ACCT 000006939825110+
REQUESTOR U751334
27136056  09/29/2022 Research 27136202 HOGAN HISTORICAL: 0000000000693982511001

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

BRAVO'S CONSTRUCTION
1439 W JEFFERSON BLVD
LOS ANGELES, CA 90007-3422

1169

16-24/1220 4875

DATE Jan/23/2018

PAY TO THE ORDER OF   Hammer & Wood                    $ 15,000

Fifteen Thousand & No/100                    DOLLARS

Wells Fargo Bank, N.A.
California
wellsfargo.com

FOR Acct # 6987 9898 5          Siaro Bravo

⑈000000116⑈ ⑈122000247⑈ 6939825110⑈

CREDIT TO ACCOUNT OF
WITHIN NAMED PAYEE
FOR DEPOSIT ONLY
JPMorgan Chase Bank, N.A.

REQUEST 00000000008771773     15000.00
20180123 000008319493131+
ACCT 000006939825110+
REQUESTOR U751334
27136056  09/29/2022 Research 27136202 HOGAN HISTORICAL: 0000000000693982511001

Summons and Subpoenas Department
S4001-01F
Phoenix AZ 85038

# EXHIBIT 6

Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Proposed Designee
Christopher Kamon



FILED

MAR 3 1 2021

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

In Re GIRARDI KEESE,

             Debtor.

Case No. 2:20-bk-21022-BR

Chapter 7

**OPPOSITION TO MOTION TO DESIGNATE CHRISTOPHER KAMON TO APPEAR OR ACT ON BEHALF OF THE DEBTOR AND COMPEL ATTENDANCE AT THE § 341(a) MEETING OF CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9001(5); DECLARATIONS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

1       Christopher Kamon, by and through his attorney of record, Richard M.

2   Steingard, hereby submits this *Opposition to Motion to Designate Chris Kamon to*

3   *Appear or Act on Behalf of the Debtor and Compel Attendance at the § 341(a)*

4   *Meeting of Creditors Pursuant to Federal of Bankruptcy Procedure 9001(5)*.

5       In support of this Opposition, Mr. Kamon submits the following

6   memorandum of points and authorities and the attached declarations of Richard M.

7   Steingard and Christopher Kamon.

8

9   DATED:  March 31, 2021              Respectfully submitted,

10

11                                     LAW OFFICES OF RICHARD M. STEINGARD

12

13

14                                     RICHARD M. STEINGARD
                                       Attorneys for Prospective Designee
15                                     CHRISTOPHER KAMON

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW
OFFICES OF
RICHARD M.
STEINGARD

                                    2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

On March 18, 2021, Elisa D. Miller, the Chapter 7 Trustee ("Trustee"), moved this Court to designate Christopher Kamon to appear and act on behalf of the debtor, and to compel his attendance at a § 341(a) meeting of the creditors pursuant to Federal Rules of Bankruptcy Procedure 9001(5). (ECF 269.)  By this Opposition, Mr. Kamon opposes the Trustee's motion.

As set forth below and in the attached declarations, there is an ongoing federal criminal investigation in the Northern District of Illinois concerning the Girardi Keese law firm where Mr. Kamon was employed.  If named as a designee, based on the government's investigation and the advice of counsel, Mr. Kamon intends to assert his rights under the Fifth Amendment to the U.S. Constitution and decline to make a statement or answer any questions put to him by the Trustee, creditors, or anyone else associated with this action.  As such, the proposed appointment of Mr. Kamon would serve no purpose: neither the Trustee nor the creditors would obtain the information they seek.  Accordingly, we ask that the Court deny the Trustee's motion.

It bears noting that before filing this Opposition, Mr. Kamon's counsel contacted the Trustee's counsel, advised that Mr. Kamon intended to assert his Fifth Amendment rights, and asked that the Trustee withdraw the instant motion. (Declaration of Richard M. Steingard at ¶ 3.)  Trustee's counsel subsequently advised that the Trustee would not withdraw the motion. (*Id.*)

**II.**

**ARGUMENT**

Rule 9001(5), Federal Rules of Bankruptcy Procedure ("FRBP") states, in relevant part, "When any act is required by these rules to be performed by a debtor or when it is necessary to compel attendance of a debtor for examination and the

LAW
OFFICES OF
RICHARD M.
STEINGARD

3

1   debtor is not a natural person: … (B) if the debtor is a partnership, "debtor"

2   includes any or all of its general partners or, if designated by the court, any other

3   person in control."  In the instant case, the Trustee asserts that Christopher Kamon

4   is "an appropriate party to designate and appear on behalf of the Debtor under

5   RFBP 9001(5)." (ECF 269 at 6.)  According to the Trustee's motion, Mr. Kamon

6   was the Chief Financial Officer of Girardi Keese, operated and oversaw the firm's

7   accounting department, participated in discussions with insolvency advisors and

8   potential lenders, prepared checks on behalf of the firm (including for the firm's

9   trust account) and was a Trustee for the firm's 401(k) plan. (*Id.*)

10         Accepting these allegations as true, Mr. Kamon submits that he should not

11   be designated by the Court to appear and act on behalf of the debtor and participate

12   at a § 341(a) meeting of the creditors.  As stated in Mr. Kamon attached

13   declaration, based on the advice of counsel, Mr. Kamon intends to assert his rights

14   under the Fifth Amendment to the U.S. Constitution and will decline to make any

15   statements or answer any questions put to him by the Trustee or creditors.

16   (Declaration of Christopher Kamon at ¶ 2.)  Case law makes clear that individuals

17   retain their Fifth Amendment rights during bankruptcy proceedings. *See e.g., In Re*

18   *Iorizzo*, 35 B.R. 465, 467 n.3 (E.D.N.Y. 1983) (recognizing that "the Iorizzos may

19   be properly exercising their Fifth Amendment privilege against self-incrimination"

20   even though "the Trustees' duties are considerably hindered thereby").  *See also In*

21   *Re Save More Foods Inc*, 96 B.R. 1 (D.D.C 1989).

22         Nor can there be a claim that Mr. Kamon's assertion of the privilege is

23   misplaced or frivolous.  On December 14, 2020, the Hon. Thomas M. Durkin,

24   United States District Court for the Northern District of Illinois, granted a Motion

25   to Show Cause against the Girardi Keese law firm regarding the alleged misuse of

26   funds in the firm's attorney trust account. (*In Re: Lion Air Flight JT 610 Crash*,

27   Case No. 18-CV-07686 (N.D. Ill.), ECF 848.)  That same date, the Court made a

28   criminal referral of the Girardi Keese firm to the United States Attorney's Office

LAW
OFFICES OF
RICHARD M.
STEINGARD

4

1   for the Northern District of Illinois and the government simultaneously moved to
2   unseal Mr. Girardi's Verified Motion for Rule to Show Cause. (*Id.* at ECF 850.)  In
3   its filing, the government noted the Court's criminal referral and explained the
4   basis for its request as follows: "The government respectfully requests that the
5   Court enter an order modifying its current sealing order to allow access by the
6   USAO, and any law enforcement personnel or Department of Justice personnel
7   working with the USAO, to any materials filed under seal pursuant to the Court's
8   January 23, 2020 sealing order, regardless of when filed." (*Id.*)  On December 16,
9   2020, the Court granted the government's motion. (*Id.* at ECF 869.)
10          On March 30, 2021, counsel for Mr. Kamon spoke with Assistant U.S.
11  Attorney Chris Catizano, one of the Chicago prosecutors assigned to the
12  investigation of the Girardi Keese firm, and inquired of Mr. Kamon's status in the
13  government's investigation. (Declaration of Richard M. Steingard at ¶ 4.)
14  Typically, the government assigns a label—witness, subject, or target—to an
15  individual who has some connection to an ongoing criminal investigation.  Counsel
16  asked Mr. Catizano about Mr. Kamon's status in the investigation.  Mr. Catizano
17  advised that at this juncture, he was unable to provide a witness/subject/target
18  description of Mr. Kamon. (*Id.*)
19          Nonetheless, the Trustee's allegations provide a more than sufficient basis
20  for Mr. Kamon's assertion of the Fifth Amendment privilege.  As noted above, the
21  Trustee's motion asserts that Mr. Kamon was the CFO of Girardi Keese, operated
22  and oversaw its accounting department, prepared checks on behalf of the firm
23  (including checks in the trust account that formed the basis for the Court's criminal
24  referral), participated in discussions with insolvency advisors and potential lenders,
25  and acted as a Trustee for the firm's 401(k) plan. (ECF 269 at 6.)  On these bases,
26  Mr. Kamon's right to assert a Fifth Amendment privilege seems self-evident.
27          As a practical matter, Mr. Kamon's proposed designation would be futile.
28  Because Mr. Kamon will assert his Fifth Amendment privilege and not provide the

LAW
OFFICES OF
RICHARD M.
STEINGARD

5

1  Trustee or creditors with any sought-after information, such a designation would
2  be a waste of time and resources, would not serve to advance anyone's interests,
3  and would only delay the resolution of the Chapter 7 bankruptcy proceedings.  In
4  essence, the designation of Mr. Kamon and his assertion of the Fifth Amendment
5  privilege will merely postpone the Trustee's motion for another proposed designee.
6  While Mr. Kamon appreciates that the Trustee seeks a substitute for the debtor
7  who can advance her inquiry, Mr. Kamon's designation will not accomplish that
8  purpose.

## III.

## CONCLUSION

11  For all the reasons set forth above, Mr. Kamon respectfully requests that the
12  Court deny the Trustee's motion.

14  DATED:  March 31, 2021              Respectfully submitted,

16                LAW OFFICES OF RICHARD M. STEINGARD

19  RICHARD M. STEINGARD
20  Attorney for Proposed Designee
    CHRISTOPHER KAMON

## DECLARATION OF RICHARD M. STEINGARD

I, Richard M. Steingard, state and declare as follows:

1. I am an attorney licensed to practice in the State of California and before this
   Honorable Court.  My firm represents Christopher Kamon in the above-
   captioned matter.  I submit this declaration in support of Mr. Kamon's
   Opposition to Motion to Designate Chris Kamon to Appear or Act on Behalf
   of the Debtor and Compel Attendance at the § 341(a) Meeting of Creditors
   Pursuant to Federal of Bankruptcy Procedure 9001(5).

2. Since being retained, I have spoken to my client on multiple occasions.
   Based on our discussions, Mr. Kamon has advised me that, if designated, he
   will assert his rights under the Fifth Amendment to the U.S. Constitution and
   decline to make a statement or answer any questions by the Trustee or
   creditors.

3. On March 29, 2021, I spoke to Mr. Kamon's civil counsel, Jon Golden.  Mr.
   Golden advised me that on March 23, 2021, after learning of the Trustee's
   motion, he spoke to the Trustee's counsel to advise him that, if designated,
   Mr. Kamon would assert his Fifth Amendment rights and decline to make a
   statement or answer any questions by the Trustee or creditors.  Mr. Golden
   stated that he asked that the Trustee withdraw its motion seeking to
   designate Mr. Kamon.  Mr. Golden advised me that on March 24, 2021,
   Trustee's counsel emailed him to say that the Trustee would not withdraw
   the motion.

4. On March 31, 2021, I spoke with Chris Catizano, an Assistant U.S. Attorney
   in the Northern District of Illinois.  I had previously been advised that Mr.
   Catizano was one of the prosecutors assigned to the criminal investigation of
   Girardi Keese.  After advising Mr. Catizano of the status of the Trustee's
   motion, I asked whether the government considered Mr. Kamon a witness,

LAW
OFFICES OF
RICHARD M.
STEINGARD

1    subject, or target of their investigation.  Mr. Catizano stated that at this

2    juncture, he could not provide me with a witness/subject/target description

3    for Mr. Kamon.

4

5        I declare under penalty of perjury that the foregoing is true and correct.

6  Executed this 31st day of March, 2021, at Los Angeles, California.

7

8

9                  Richard M. Steingard

LAW
OFFICES OF
RICHARD M.
STEINGARD

## DECLARATION OF CHRISTOPHER KAMON

I, Christopher Kamon, state and declare as follows:

1. I submit this declaration in support of the Opposition to Motion to Designate Chris Kamon to Appear or Act on Behalf of the Debtor and Compel Attendance at the § 341(a) Meeting of Creditors Pursuant to Federal of Bankruptcy Procedure 9001(5).

2. I am aware that the United States Attorney's Office for the Northern District of Illinois is conducting a criminal investigation of Girardi Keese where I was employed. After discussions with my counsel, it is my intention to follow their advice and, if designated, assert my rights under the Fifth Amendment to the U.S. Constitution and decline to make a statement or answer any questions by the Trustee or creditors.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 31ˢᵗ day of March, 2021, at Los Angeles, California.

Christopher Kamon

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Law Offices of Richard M. Steingard
800 Wilshire Boulevard, Suite 1050, Los Angeles CA 90017

A true and correct copy of the foregoing document entitled (*specify*): OPPOSITION TO MOTION TO DESIGNATE CHRISTOPHER KAMON TO APPEAR OR ACT ON BEHALF OF THE DEBTOR AND COMPEL ATTENDANCE AT THE § 34I(a) MEETING OF CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9001(5); DECLARATIONS
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _03/31/2021_____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _03/31/2021_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.
The Honorable Barry Russell
U.S. Bankruptcy Court
Roybal Federal Building
255 East Temple Street, Suite 1660, Los Angeles, CA 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 03/31/2021 | Anthony K. Wong | |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY UNITED STATES MAIL:**

Rafey Balabanian
Edelson PC
123 Townsend St Ste 100
San Francisco, CA 94107

Michelle Balady
Bedford Law Group
1875 Century Blvd, Ste 1790
Los Angeles, CA 90067

William C Beall
Beall and Burkhardt, APC
1114 State St Ste 200
Santa Barbara, CA 93101

Richard D Buckley
Arent Fox LLP
555 West Fifth Street, 48th Flr
Los Angeles, CA 90013

Marie E Christiansen
Vedder Price (CA) LLP
1925 Century Park E Ste 1900
Los Angeles, CA 90067

Jennifer Witherell Crastz
15910 Ventura Blvd 12th Flr
Encino, CA 91436-2829

Clifford S Davidson
Snell & Wilmer LLP
One Centerpointe Drive, Suite 170
Lake Oswego, OR 97035

Richard W Esterkin
300 S Grand Ave 22nd Fl
Los Angeles, CA 90071-3132

Lei Lei Wang Ekvall
Timothy W. Evanston
Philip E. Strok
Smiley Wang-Ekvall, LLP
3200 Park Center Drive, Suite 250
Costa Mesa, CA 92626
714-445-1000

Andrew Goodman
Goodman Law Offices, APC
30700 Russell Ranch Road, Suite 250
Westlake Village, CA 9136

Eric D Goldberg
DLA Piper LLP
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, CA 90067

Marshall J Hogan
Snell & Wilmer
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626

Sheryl K Ith
Cooksey, Toolen, Gage, Duffy & Woog
535 Anton Blvd, 10th Fl
Costa Mesa, CA 92626

Razmig Izakelian
Quinn Emanuel Urquhart & Sullivan
865 S. Figueroa St., Fl. 10
Los Angeles, CA 90017

Lewis R Landau
22287 Mulholland Hwy., # 318
Calabasas, CA 91302

Daniel A Lev
333 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

Scott H Olson
Vedder Price
275 Battery Street, Suite 2464
San Francisco, CA 94111

Leonard Pena
402 S Marengo Ave, Ste B
Pasadena, CA 91101

Michael J Quinn
Vedder Price (CA) LLP
1925 Century Park E, Ste 1900
Los Angeles, CA 90067

Kevin C Ronk
4333 Park Terrace Drive, Ste 205
Westlake Village, CA 91361

William F Saavino
1900 Main Place Tower
Buffalo, NY 14202

Eric D Winston
Quinn Emanuel Urquhart & Sullivan
LLP
865 South Figueroa Street 10th Floor
Los Angeles, CA 90017

Christopher K.S. Wong
Arent Fox LLP
555 W Fifth St 48th Fl
Los Angeles, CA 90013

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                          **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT 7

Richard M. Steingard (SBN 106374)
*rsteingard@SteingardLaw.com*
LAW OFFICES OF RICHARD M. STEINGARD
800 Wilshire Boulevard, Suite 1050
Los Angeles, California 90017
Telephone: (213) 260-9449
Facsimile: (213) 260-9450

Attorney for Proposed Designee
Christopher Kamon

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| In Re GIRARDI KEESE, | Case No. 2:20-bk-21022-BR |
|---|---|
| Debtor. | Chapter 7 |
| | **PROPOSED DESIGNEE'S SUR-REPLY TO TRUSTEE'S REPLY TO OPPOSITION TO MOTION TO DESIGNATE CHRISTOPHER KAMON TO APPEAR OR ACT ON BEHALF OF THE DEBTOR AND COMPEL ATTENDANCE AT THE § 341(a) MEETING OF CREDITORS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9001(5)** |

LAW
OFFICES OF
RICHARD M.
STEINGARD

1

Christopher Kamon, by and through his attorney of record, Richard M. Steingard, hereby submits this *Sur-Reply to Trustee's Reply to Opposition to Motion to Designate Chris Kamon to Appear or Act on Behalf of the Debtor and Compel Attendance at the § 341(a) Meeting of Creditors Pursuant to Federal of Bankruptcy Procedure 9001(5).*

DATED:  April 29, 2021                    Respectfully submitted,

LAW OFFICES OF RICHARD M. STEINGARD


_____/s/_____
RICHARD M. STEINGARD
Attorney for Prospective Designee
CHRISTOPHER KAMON

LAW
OFFICES OF
RICHARD M.
STEINGARD

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

On April 27, 2021, the Chapter 7 Trustee ("Trustee") filed a Reply to Christopher Kamon's Opposition to his designation as a substitute debtor.  The Trustee makes three points: (1) Mr. Kamon concedes that he is an appropriate designee; (2) the designation of Mr. Kamon is not futile, even though he will assert his Fifth Amendment privilege and decline to make a statement or answer questions, because an adverse inference against a debtor can be drawn from an assertion of the privilege; and (3) the appointment is not futile because Mr. Kamon can then be compelled to produce all corporate documents in his possession.  All three arguments are wrong or without legal support.  We briefly address each below.

## II.

## ARGUMENT

### A. Mr. Kamon Does Not Concede He is an Appropriate Designee

The Trustee first claims that Mr. Kamon conceded that he is an appropriate designee. (ECF 320 at 3.)  Mr. Kamon made no such concession.  Mr. Kamon's Opposition brief responded to the Trustee's claim that Mr. Kamon was the CFO of the debtor, Girardi Keese, by stating, "Accepting these arguments as true…" (ECF 290 at 4.)   As the Trustee well knows, this is not a concession but a linguistic manner of addressing an argument advanced by the opposing side.  To put this issue to rest, Mr. Kamon does not concede any fact or argument advanced by the Trustee.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  The Trustee's Claim that Mr. Kamon's Assertion of the Fifth Amendment is a Basis to Draw Advance an Adverse Inference Against the Debtor is Without Legal Sport**

As one of two bases for requesting that the Court designate Mr. Kamon, the Trustee asserts that if Mr. Kamon is so designated and asserts his Fifth Amendment privilege, the Trustee can draw an adverse inference against the debtor. (ECF 320 at 2-4.)  Here, the Trustee confuses Mr. Kamon—*a non-party and not the debtor*—to the debtor—a *party*.  There is an obvious difference between the two, and the cases cited by the Trustee—*Baxter* and *Seror*—only apply to "a party" or the "debtor" in an action.  *Baxter v. Palmigiano*, 425 U.S. 308, 318 *Seror v. Lopez (In re Diana Lopez)*, 532 B.R. 140, 159 (Bankr. C.D. Cal. 2015).  Counsel is unaware of any case—and the Trustee has cited none—in which a court found that a *non-party's* assertion of his or her Fifth Amendment rights was a basis to draw an adverse inference against a *party*, or that the assertion of the Fifth Amendment by a *substitute designee* for a debtor is a basis for drawing an adverse inference against *the debtor*.  Absent such a holding, the Trustee's first justification in favor of the designation fails.

**C.  The Trustee's Claim that Mr. Kamon's Designation Will Permit the Trustee to Compel Production of Records is False**

As the second of two bases justifying the request for Mr. Kamon's designation, the Trustee claims that Mr. Kamon can then be compelled to produce any debtor's records in his possession. (ECF 320 at 4.)  This too is legally baseless.

While an individual does not have Fifth Amendment right over certain documents, Mr. Kamon retains a Fifth Amendment right over the physical act of *producing* any such documents.  *United States v. Doe,* 465 U.S. 605, 616 (1984) ("The act of producing the documents at issue in this case is privileged and cannot be compelled without a statutory grant of use immunity pursuant to 18 U.S.C. §§ 6002 and 6003.").  This is commonly referred to as "*Doe* immunity" and is accomplished by the U.S. Attorney requesting, and a court's granting, immunity

1   for the act of producing any records.  *See e.g.*, *Matter of Grand Jury Proceedings*,

2   68 F.3d 193, 194 (7th Cir. 1995).  In the absence of *Doe* immunity being conferred,

3   Mr. Kamon retains his Fifth Amendment rights.

4         Additionally, the Trustee's position is based solely on FRBP 9001(5), which

5   states, in relevant part, that "[w]hen any act is required by these rules to be

6   performed by a debtor…if the debtor is a partnership, 'debtor' includes…if

7   designated by the court, any other person in control." (ECF 320 at 4.)  As the

8   statute explicitly states, this provision only applies to "partnerships."  FRBP

9   9001(5)(B). The Trustee has made no showing that the debtor was a partnership

10   and two recently filed documents indicate that the debtor was actually a sole

11   proprietorship.

12         On March 27, 2021, Jason Rund, the Chapter 7 Trustee in Mr. Girardi's

13   personal bankruptcy matter, filed a Schedule of Assets and Liabilities for Mr.

14   Girardi in which he stated that Mr. Girardi was the 100 % sole owner of the Girardi

15   Keese law firm. (*In Re Thomas Girardi*, Case No. 20-BK-21020, ECF 139 at 7.)

16   More recently, on April 27, 2021, in the related case of *Welly Chandra v. Boeing*

17   *International Sales Corporation*, Case No. 18-CV-07686-TMD, currently pending in the

18   Northern District of Illinois, David Lira, a so-called "partner" at Girardi Keese, stated

19   that Girardi Keese was not a partnership but a sole proprietorship. (ECF 1060 at 7-8.)

20         These pleadings place at issue the legal status of the debtor; needless to say, if the

21   debtor is found not to be a partnership, Rule 9001(5)—upon which the Trustee solely

22   relies for the designation—is inapplicable.

23   ///

24   ///

25

26

27

28


LAW
OFFICES OF
RICHARD M.
STEINGARD

5

1

**III.**

**CONCLUSION**

The Trustee has cited two grounds for claiming that the designation of Mr.
Kamon is justified and would not be an act of futility.  Neither has support in the
facts or law.

In light of Mr. Kamon's stated intention to assert his Fifth Amendment
rights, which the Trustee does not challenge, and because the Trustee has not
provided a credible reason to still have Mr. Kamon designated a substitute debtor,
we respectfully ask that the Court deny the Trustee's motion.

DATED:  April 29, 2021                  Respectfully submitted,


LAW OFFICES OF RICHARD M. STEINGARD


_____
            */s/*
RICHARD M. STEINGARD
Attorney for Proposed Designee
CHRISTOPHER KAMON

LAW
OFFICES OF
RICHARD M.
STEINGARD