GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

May 26, 2023

VIA ELECTRONIC FILING

The Honorable Julien Xavier Neals
United States District Court for the District of New Jersey
50 Walnut Street
Newark, NJ  07102

Re:   *In re: BetMGM Data Breach Litigation*, Case No. 2:22-cv-07462-JXN-CLW
      Request for Pre-Motion Conference

Dear Judge Neals:

In accordance with the Court's Judicial Preferences, BetMGM, LLC respectfully requests a pre-motion conference in connection with its anticipated motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) and, alternatively, to strike class allegations pursuant to Rule 23(d)(1)(D).

This lawsuit originally sought damages on behalf of a putative nationwide class of everyone who was potentially affected by a data incident that occurred last May. But after plaintiffs' counsel learned that the vast majority of these individuals (including almost all of their clients) agreed to binding arbitration, they dropped four of their five clients from the pleadings, added a new "No-Arbitration" subclass, and narrowed their damages claims to this new subclass. But plaintiffs' counsel's efforts to avoid arbitration have resulted in a confused lawsuit that suffers from numerous problems, including (i) an uninjured serial named plaintiff who lacks standing, (ii) allegations that fail to state a claim, and (iii) a facially overbroad proposed nationwide class.

I.   BACKGROUND

BetMGM is a highly regulated online gaming company that provides leading sports and betting experiences and technology in over 20 jurisdictions. On December 21, 2022, BetMGM announced that it learned "on November 28, 2022" that "certain BetMGM patron records were obtained in an unauthorized manner" in an incident that "occurred in May 2022." (Am. Compl. ¶ 27.) Although patron passwords, banking information, and account funds were not compromised, BetMGM informed potentially affected patrons about the incident and offered free credit monitoring and identity restoration services for two years. (*Id.*)

Following BetMGM's announcement, several law firms filed putative class action lawsuits in this Court. One firm voluntarily dismissed its lawsuit to pursue arbitration, and BetMGM informed the remaining counsel that the vast majority of patrons—including four of their remaining five clients—had accepted BetMGM's Terms of Service, which contain a mandatory arbitration clause. Plaintiffs nonetheless successfully sought this Court's permission to file a "consolidated" complaint.

But rather than "consolidating" the underlying lawsuits, the operative complaint dropped four of the named plaintiffs and kept all of the lawyers but only a single plaintiff, Scott Madlinger, a serial litigant who has filed more than 70 lawsuits in New Jersey—several of which have been dismissed for lack of standing. *See, e.g.*, *Madlinger v. Fin. Recovery Servs.*, No. 21-1288-FLW, 2023 WL 3240795, at *3–*6 (D.N.J. Jan. 9, 2023). He also never registered for an account directly with BetMGM, never used BetMGM's services, never alleged that he took advantage of BetMGM's offer of free credit monitoring, and never alleged that he experienced identity theft or fraud. Despite these deficiencies, Mr. Madlinger seeks declaratory and injunctive relief (Count IV) on behalf of a nationwide class of everyone whose information was "compromised" in the data incident, and damages for negligence and implied contract claims (Counts I–III) on behalf of those patrons "whose agreements with BetMGM do not contain an arbitration clause."

## II.    ARGUMENTS

As will be more fully explained in BetMGM's forthcoming motion (and as briefly summarized below), Plaintiff's allegations are deficient on several levels and the Court should dismiss the complaint or, at minimum, strike the nationwide class allegation.

***Plaintiff Lacks Standing to Bring this Lawsuit.*** As an initial matter, the entire complaint should be dismissed under Rule 12(b)(1) because Mr. Madlinger has not alleged an injury in fact that is "actual or imminent" and "concrete." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Plaintiff's primary claimed injury is that he is "at risk of future identity theft and fraud," but an "alleged increased risk of future injury is nothing more than speculation" that is not "sufficient to satisfy Article III." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42–43 (3d Cir. 2011). Nor has Plaintiff alleged facts establishing an "imminent" risk of injury. An "imminent" injury is one that is "certainly impending" or where there is a "substantial risk that the harm will occur." *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) (cleaned up). All Mr. Madlinger has alleged is that someone *may* have accessed his information, but he fails to plead facts—such as what types of information about him were specifically accessed, that there has been misuse of his data, or that his information has been published on the "dark web"—that establish an imminent injury, as opposed to one based on the "speculative, future actions of an unknown third-party." *Reilly*, 664 F.3d at 42. And his alleged derivative injuries, like lost time devoted to monitoring his credit (above and beyond the free credit monitoring that BetMGM offered to him), are not "currently felt concrete harms" that transform a speculative injury into one that is "actual" or "imminent." *Clemens*, 48 F.4th at 152, 156.

***The Complaint Does Not State a Claim for Negligence (Counts I and II).*** Plaintiff's negligence claims fail for several independent reasons. First, Plaintiff's allegations about a risk of identity theft or time spent monitoring his credit do not constitute "actual damages," which is what he must plead to state a claim for negligence under New Jersey law. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 400 (2009). Second, Plaintiff's negligence claims are barred by the economic loss rule because he has not alleged any personal injury or physical damage, and New Jersey law recognizes that tort claims are inappropriate to address damages "that the parties have, or could have, addressed in their agreement." *Spring Motors Distribs., Inc. v. Ford Motor Inc.*, 98 N.J. 555, 580 (1985); *see also Travelers Indem. Co. v. Damman & Co.*, 594 F.3d 238, 248 (3d Cir. 2010) (New Jersey law has a "strong resistance to the usurpation of contract law by tort law").

Third, the "negligence per se" claim should be dismissed because the FTC Act does not create any private right of action and New Jersey does not permit such a regulation to "constitute the basis for an independent or direct tort remedy." *Alloway v. Bradlees, Inc.*, 157 N.J. 221, 234–36 (1999).

***The Complaint Also Does Not State a Claim for Breach of Implied Contract (Count III).*** The implied contract claim fails because Mr. Madlinger has alleged that there are express contracts—including "agreements with BetMGM" (Am. Compl. ¶ 89)—that govern the maintenance of patron information. In fact, the existence of these agreements is what determines membership in the "No-Arbitration" Subclass. A claim for breach of an implied contract is "legally untenable" in the face of an express agreement governing the same subject matter. *Baer v. Chase*, 392 F.3d 609, 616–17 (3d Cir. 2004).

***Plaintiff Is Not Entitled to Prospective Relief (Count IV).*** Plaintiff's "Declaratory Judgment" claim should be dismissed for two independent reasons: First, it is impermissibly duplicative of his negligence claim. *See Jones v. ABN Amro Mortg. Grp. Inc.*, 606 F.3d 119, 125 n.5 (3d Cir. 2010). Second, and more fundamentally, Plaintiff lacks standing to pursue declaratory relief because he fails to plead any imminent future harm. The only harm that could be redressed by Plaintiff's proposed declaratory relief is if BetMGM hypothetically suffered a second breach that implicates his data, but he provides no factual allegations suggesting that any subsequent breach is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("allegations of *possible* future injury are not sufficient") (citations omitted). If Plaintiff's speculative, conclusory allegations were sufficient, then any plaintiff could sue any entity for a potential data breach that has not yet occurred.

***At a Minimum, the Court Should Strike the Nationwide Class Allegation Under Rule 23(d)(1)(D).*** Rule 23(c)(1)(A) encourages courts to resolve class certification issues at "an early practicable time after a person sues," and striking class allegations is appropriate when "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011). Here, even though the *vast majority* of patrons have agreed to binding arbitration, the complaint nonetheless pleads a putative nationwide class that includes "[a]ll individuals whose PII was compromised in the data breach," without regard to whether they agreed to arbitration. (Am. Compl. ¶ 88.) By including patrons who are required to arbitrate any claims, the nationwide class is subject to overbreadth, typicality, and adequacy problems. *See In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 262 (3d Cir. 2009). There is no amount of discovery that could change the fact that as pled, the nationwide class includes individuals who cannot sue in court—district courts routinely strike class allegations involving putative class members who are bound by arbitration. *E.g.*, *Zieger v. Advance Am.*, No. 13-1614, 2014 WL 7388365, at *7 (D. Del. Dec. 29, 2014); *see also Forby v. One Techs., LP*, No. 16-856, 2020 WL 4201604, at *9 (N.D. Tex. July 22, 2020).

\* \* \*

We welcome a pre-motion conference if Your Honor believes that one would be helpful, and BetMGM is also prepared to proceed with its proposed motion without a conference if preferable. We are grateful for the Court's attention to this matter.

Respectfully submitted,

*/s/ Stephanie L. Silvano*

Stephanie L. Silvano

cc: All Counsel of Record (via CM/ECF)